RAY RAYMOND v. GEORGE A. McKENZIE, JR.,
AND OTHERS.[1]

June 22, 1945.

No. 34,014.

*Alfred R. Sundberg,* for appellant.

· *George T. Olsen,* for respondent George A. McKenzie, Jr.

*Burtin A. Shay,* for respondents Louis J. and Florence Rechtzigel, George and James Wescott, and West St. Paul State Bank.

[1]Reported in 19 N. W. (2d) 423.

*Henry W. Volk,* for respondents John G. and Marie A. Ballord, John A. Ballord, E. B. and Martha N. Southworth.

MAGNEY, JUSTICE.

The court found for defendants. Plaintiff appeals from the order denying his motion for a new trial.

In the fall of 1942, plaintiff desired to purchase the so-called Wescott farm in Dakota county. He made a deposit of $175 on an agreed purchase price of $5,500. The agreement was made with defendant George A. McKenzie, Jr. McKenzie was the owner of a six-tenths interest in the farm, and defendants George Wescott and his brother, James, each owned a two-tenths interest. James lived in Idaho. Plaintiff was told that George Wescott's approval of the sale would have to be obtained. The offer of $5,500 was not acceptable to George, and plaintiff's deposit check was returned to him by McKenzie.

The taxes on the farm were delinquent in excess of $2,000. Notice of expiration of redemption had been served. Under that notice, the property would be forfeited to the state in February 1943, unless, in the meantime, the delinquency were removed. It became necessary to negotiate a mortgage loan for $2,000 with which to pay these taxes. To effectuate this, George and James Wescott conveyed their interests to McKenzie. He then secured a loan for $2,000 and used the proceeds to pay the delinquent taxes. It had been agreed between McKenzie and the Wescotts that when such mortgage had been executed, McKenzie would convey back to the Wescotts their respective interests.

Plaintiff testified that he noticed in a Dakota county newspaper that the Wescott farm had been transferred to McKenzie. In January 1943, he wrote McKenzie inquiring about the property. McKenzie replied: "Yes, I now have the sale of the Wescott farm in my hands, and it is for sale," but he said he did not think plaintiff would be interested because of the advance in price. On April 8, 1943, plaintiff went to the McKenzie home in St. Peter. He said

he wanted to buy the Wescott farm. After a conversation lasting an hour or two, McKenzie signed the following receipt:

"St. Peter, Minn., April 8th, 1943

"Received of Ray Raymond, the sum of Two Hundred Dollars, as down payment on [description of property] * * *, the balance of Six thousand three hundred dollars to be paid in cash at the office of the Title Insurance Company of Minnesota at Minneapolis as soon as notified that title of said premises is ready.

"*Possession of said premises is desired by purchaser at once, and if same cannot be delivered immediately then and in that case said down payment is to be refunded to said purchaser.* [Italics supplied.] He is to have the right to enter upon said premises within ten days from date hereof to plow and cultivate said premises, and is to be notified just as soon as title to said premises is ready.

"Geo. A. McKenzie, Jr."

The receipt was not signed by McKenzie's wife.

A Mrs. Johnson was a tenant in possession of the Wescott farm. Her lease ran from April 1 of one year to April 1 of the next year. When the receipt of April 8, 1943, was given, she was in possession for another term of one year. The court found that plaintiff had full notice and knowledge of the tenancy at the time he accepted the receipt and paid the $200. The court also found that at that time plaintiff had full notice and knowledge that the premises were owned in part by others than McKenzie. The testimony supports these findings.

The Wescotts refused to sell for $6,500. They had been offered $6,750 for the farm, and it was sold to defendant Louis J. Rechtzigel for that price. The purchaser made an agreement with Mrs. Johnson, the tenant, which permitted her to live on the premises until the following fall, and she paid him for the use of the pasture. It is evident, therefore, that, because of the tenant's possession and the refusal of the Wescotts to sell at the price agreed upon by plaintiff and McKenzie, possession could not be given to plaintiff immediately. There is considerable other evidence on other mat-

ters, but, as we view the case, there is no necessity to detail or consider it. In our opinion, the import and effect of the language of the receipt which we have italicized is such that the order appealed from must be affirmed.

In Schwab v. Baremore, 95 Minn. 295, 296, 104 N. W. 10, an executory contract for the sale of land contained the following provision:

"* * * And it is agreed that if the title to said premises is not good and cannot be made good this agreement shall be void and the above fifty dollars refunded."

In that case, the wife of the seller did not join in the contract and refused to sign or execute a deed in fulfillment of same. Thus it appeared that the seller was unable to convey a good title. The court held that the contract became null and void, as by its terms provided, and it allowed the recovery of $50. It said (95 Minn. 297, 104 N. W. 11):

"It is entirely competent for the parties to a contract to provide for the discharge or annulment thereof, either by subsequent agreement or by incorporating provisions or conditions to that end in the original agreement, and they may fix and limit the rights and liability of each in the event of a failure of performance, and the courts will enforce contracts in this particular precisely as in other respects, and in accordance with the rights of the parties as they are thus fixed and limited."

It further said (95 Minn. 298, 104 N. W. 11):

"* * * This provision of the contract must be construed to bind both parties."

The court continued (same page):

"Within this rule, defendant has a legal right with plaintiff to invoke this particular feature of the contract, in the absence of a showing of fraud on his part to avoid performing the same. The contract contemplated a conveyance of defendant's entire farm,

and not separate tracts or distinct interests; and defendant is clearly in position to insist that his inability to perform as contemplated brings in operation the clause terminating it. That he was a married man, residing upon the farm with his family, and that part thereof constituted his homestead, were facts well known to plaintiff at the time the contract was entered into, and it should not be enforced in any respect other than what the parties intended when it was entered into."

Mackey v. Ames, 31 Minn. 103, 16 N. W. 541; Dana v. St. Paul Inv. Co. 42 Minn. 194, 44 N. W. 55; Heisley v. Swanstrom, 40 Minn. 196, 41 N. W. 1029; Joslyn v. Schwend, 85 Minn. 130, 88 N. W. 410, 744; Kasal v. Hlinka, 118 Minn. 37, 136 N. W. 569; Nostdal v. Morehart, 132 Minn. 351, 157 N. W. 584; Horseth v. Fuglesteen, 165 Minn. 38, 205 N. W. 607; Miller v. O. B. McClintock Co. 210 Minn. 152, 297 N. W. 724; Kirk v. Welch, 212 Minn. 300, 3 N. W. (2d) 426. In the Kirk case, this court said (212 Minn. 306, 3 N. W. [2d] 429):

"Parties to a contract may provide for its annulment or discharge."

In the instant case, plaintiff knew that there was a tenant in possession and that the Wescotts were part owners of the farm at the time he paid the $200 and accepted a receipt therefor. He wanted immediate possession, and if possession could not be had immediately, the down payment of $200 was to be refunded to him. Immediate possession could not be given, and the down payment was tendered back to him. The court in the Schwab case (95 Minn. 299, 104 N. W. 11) said that the contract "should not be enforced in any respect other than what the parties intended when it was entered into." Under the agreement in this case, the parties, knowing all the facts, intended that, if possession could not be delivered immediately, the down payment was to be refunded. Possession could not be given immediately, and, in our opinion, the decision of the trial court is correct.

■ We have determined the case on its merits. However, in addition, there are the following reasons why there must be an affirmance. The suit was for specific performance and was tried by the court, which made 13 findings of fact and a conclusion of law in favor of defendants. Plaintiff moved for amended findings or for a new trial on three grounds. The first was that the decision was not justified by the evidence and was contrary to law, and the second and third related to rulings upon objections to evidence.

The assignments of error in this court, which define the issues presented here, are four in number: (1) That the decision is not justified by the evidence and is contrary to law; (2) that the court erred in denying plaintiff's motion to strike testimony of defendants attempting to vary the terms of a written agreement; (3) that the court erred in denying plaintiff's motion for amended findings; and (4) in denying plaintiff's motion for a new trial.

Where a case is tried to the court and findings are made, the specific finding which is asserted to be without evidentiary support must be challenged in this court by a specific assignment of error. Smith v. Kipp, 49 Minn. 119, 51 N. W. 656. The second assignment of error is not argued in appellant's brief. Therefore, it is deemed waived. Dodge v. McMahan, 61 Minn. 175, 63 N. W. 487. The third assignment of error is based upon the court's denial of plaintiff's motion for amended findings, and such an order is not appealable. Rogers v. Hedemark, 70 Minn. 441, 73 N. W. 252. The fourth assignment of error is ineffective because the motion for new trial was based upon more than one ground. Adams v. City of Thief River Falls, 84 Minn. 30, 34, 86 N. W. 767, 768, and cases cited. This situation leaves plaintiff without any question properly presented to this court. Errors not assigned are deemed waived. Schleuder v. Corey, 30 Minn. 501, 16 N. W. 401. For these additional reasons, there must be an affirmance of the order from which the appeal is taken.

Order affirmed.