## LAYNE-MINNESOTA COMPANY v. REGENTS OF THE UNIVERSITY OF MINNESOTA.

123 N. W. (2d) 371.

August 16, 1963—No. 38,811.

*Carlsen, Greiner & Law,* for appellant.

*Walter F. Mondale,* Attorney General, *Donald R. Bundlie,* Special Assistant Attorney General, and *R. Joel Tierney,* University Attorney, for respondent.

ROGOSHESKE, JUSTICE.

Appeal from an order denying plaintiff's motion to compel arbitration under Minn. St. 572.09 of the Uniform Arbitration Act adopted by Minnesota in 1957.[1]

---

[1]This act was drafted and approved by the National Conference on Uniform Laws and thereafter approved by the American Bar Association in 1955. In 1957, under the sponsorship of the Minnesota State Bar Association, Minnesota was the first state to adopt the act. Wyoming, Massachusetts, Illinois, and Arizona have subsequently adopted it. 9 Uniform Laws Annotated, pocket part, p. 36.

On March 9, 1961, plaintiff, a contractor, after acceptance of its bid, entered into a construction contract with the defendant to construct caisson foundations for two buildings to be erected on the west campus of the University of Minnesota.

"A caisson is a column of concrete and steel upon which the building rests. The contract called for a total of 56 caissons with varying diameters of 4, 5 or 6 feet. Each caisson extends from the ground surface to whatever depth was necessary to get an 8-inch penetration into bedrock which was approximately 25 feet below the surface. After excavation to bedrock was completed the holes were filled with concrete and reinforcing steel to form a set of reinforced concrete legs upon which the buildings would rest."[2] Attached to the specifications, pursuant to which the plaintiff made its bid, were reports on preconstruction borings which had been conducted for defendant by the Minnesota Test Boring Company. These reports were provided for what value they might have to the contractor but were not guaranteed by defendant as accurate or indicative of all soils at the site. The contract included a modification clause and an arbitration clause hereafter quoted. During the course of the construction plaintiff encountered boulders, limestone slabs, and underground water in amounts and at locations not indicated by the plans and specifications. Plaintiff claims that a requested modification of the contract and a claim for additional compensation was made and denied. We are not informed whether this occurred before or after completion of the work.[3] Defendant does not deny that a request was made, but the particulars concerning the time, nature, and manner of the request, and of defendant's denial, are not disclosed by the record. We assume that the request was denied and that plaintiff completed the work notwithstanding this controversy.[4] In any event, after a denial,

---

[2] The record does not disclose these facts concerning the nature of the work but this statement, taken from plaintiff's brief, is not challenged by defendant.

[3] Apart from the moving papers, the record contains only the written request for arbitration and those parts of the contract which the parties deemed pertinent.

[4] Plaintiff's written request for arbitration includes this statement: "That

the plaintiff, on February 8, 1962, served a written request for arbitration of the claim for additional compensation because of unanticipated difficulties. Defendant refused this request on the ground that such claim was not a dispute intended to be referable to arbitration under the language of the arbitration clause of the contract. The controversy as to whether the claim of the contractor was a dispute subject to arbitration apparently continued and remained unresolved until April 24, 1962, on which date the defendant commenced a declaratory judgment action seeking a construction of the provisions of the contract relating to arbitration. Thereafter, pursuant to § 572.09(a) of the Uniform Arbitration Act, plaintiff made application for an order compelling arbitration and staying the declaratory judgment action until its motion to compel arbitration was heard and determined. Under § 572.09(d) of the act, the parties agreed to stay the action for declaratory judgment, and the plaintiff's application was heard and denied. The court held that the dispute involved was not one within the meaning of section 1-23 of the contract. This appeal from the order denying an application to compel arbitration is expressly authorized by § 572.26, subd. 1(1), of the act.

The pertinent provisions of the contract are as follows:

"Section 1-16 CHANGES, EXTRAS, ETC.

"* * * Should the Contractor find at any time during the progress of the work that in his judgment existing conditions demand or make desirable or beneficial a modification in the requirements covering any particulars or items, it shall be his duty and he is required to promptly report in writing each such matter to the Supervising Engineer for his decision and instruction."

---

this claim was presented to owner's representative and on January 17, 1962, the same was denied." In an opposing affidavit submitted on defendant's behalf there is this statement: "That a prerequisite to arbitration would be a decision of the architect/engineer, and that no decision has been made." This apparent conflict was not presented to nor resolved by the trial court.

"Section 1-23 DISPUTES.

"If during progress of the work, any disputes, claims or questions arise between the owner and the contractor concerning the work, the architect/engineer shall be consulted and his decision shall be final. However, decision may be submitted to arbitration."

"Section 1-24 ARBITRATION.

"All disputes, claims or questions subject to arbitration under this contract shall be submitted to arbitration in accordance with the provisions, then obtaining of the Uniform Arbitration Act. Chapter 633, Laws of Minnesota, 1957, and this Agreement shall be specifically enforceable under the prevailing arbitration law, and judgment upon the award rendered may be entered in the court of the forum, state or federal, having jurisdiction. It is mutually agreed that the decision of the arbitrators shall be a condition precedent to any right of legal action that either party may have against the other."

Essentially the question presented to the trial court and here is whether or not the parties intended by their contract to submit to arbitration a dispute arising over a claim for additional compensation occasioned by unanticipated difficulties in performing the work required by the contract.

As the question was submitted to the trial court and here, the arguments of the parties were primarily directed toward seeking a final judicial determination of whether the claim presents an issue referable to arbitration. We are urged, as was the trial court, to decide the question under the rules relating to the construction of contracts without reference to any specific provisions of the Uniform Arbitration Act. This emphasis overlooks section 1-24 of the contract which makes the act an integral part of the contract, thereby requiring a consideration of those provisions of the act which were intended to apply and control a judicial determination of the very question presented.

One of the fundamental objectives of the act was to encourage and facilitate the arbitration of disputes by providing a speedy, informal, and relatively inexpensive procedure for resolving controversies arising out of commercial transactions, including the labor-

management field. The language of the act emphasizes an intention to change the common-law policy of judicial hostility toward arbitration to one favoring arbitration. Contrary to decisions found in many states, it specifically makes a written agreement to arbitrate effective whether relating to existing or future disputes.[5] By invoking the aid of courts, the legal rights of parties to such an agreement are protected. Summary procedures are provided to compel[6] or prevent[7] arbitration and to review awards with express provisions relating to judicial vacation,[8] modification, and correction of awards,[9] as well as for the enforcement of the results of the arbitration process.[10] Even though resort to courts is authorized, the basic intent of the act is to discourage litigation and to foster voluntary resolution of disputes in a forum created, controlled, and administered by the written agreement. Thus, contracting parties, desiring to avail themselves of the benefits of arbitration, retain control over the arbitration process by the language of their agreements. In contracts providing for arbitration of future controversies, the parties may narrowly limit arbitrability or they may comprehensively provide that all

---

[5]Although in the minority, Minnesota as early as 1943 adopted the policy of favoring arbitration and held that an agreement to arbitrate a future dispute could be specifically enforced and repudiated the common-law doctrine of revocability. Park Const. Co. v. Independent School Dist. 216 Minn. 27, 11 N. W. (2d) 649; Zelle v. Chicago & North Western Ry. Co. 242 Minn. 439, 65 N. W. (2d) 583. Section 572.08 of the Uniform Act clearly reverses the common-law rule of nonenforceability by providing: "A written agreement to submit any existing controversy to arbitration or a provision in a written contract to submit to arbitration any controversy thereafter arising between the parties is valid, enforceable and irrevocable, save upon such grounds as exist at law or in equity for the revocation of any contract * * *." See, also, Pirsig, *The Minnesota Uniform Arbitration Act and the Lincoln Mills Case*, 42 Minn. L. Rev. 333; Restatement, Contracts, § 550 (1932).

[6]Minn. St. 572.09(a).

[7]Minn. St. 572.09(b).

[8]Minn. St. 572.19.

[9]Minn. St. 572.20.

[10]Minn. St. 572.18 and 572.21.

disputes, whether arising under the terms of the contract or growing out of their relationship—even though not cognizable in a court of law or equity—may be referable to arbitration.[11] Where the intention of the parties in this respect is not clearly expressed, problems relating to judicial interference with the arbitration process inevitably arise.[12]

In this case the plaintiff vigorously contends that its claim for additional compensation is a controversy which arose during the progress of the work; that it concerns the work; and is one which the parties clearly agreed to arbitrate. Defendant, with equal vigor, contends that the claim is not a controversy concerning the work, and that it is clearly not one intended to be arbitrable. These conflicting contentions demonstrate most forcibly that the language of the contract does not clearly express the intention of the parties. Moreover, our determination would have to be based solely on the language of the contract since no other evidence relevant to the question presented was submitted to the trial court. We conclude that from the language alone a reasonable basis exists for arguing either contention. This the parties concede.

We believe that where upon application to compel arbitration the court is unable to ascertain the clear intent of the parties as to the scope of the arbitration clause in a contract, the sole issue is whether or not an agreement to arbitrate exists. Minn. St. 572.09 provides:

"(a) On application of a party showing an agreement described in section 572.08, and the opposing party's refusal to arbitrate, the court shall order the parties to proceed with arbitration, but if the opposing party denies the existence of the agreement to arbitrate, the court shall proceed summarily to the determination of the issue so raised and shall order arbitration if found for the moving party, otherwise, the application shall be denied.

---

[11]Minn. St. 572.19, subd. 1(5).

[12]The draftsmen of the Uniform Act had this problem in mind because it had arisen under the New York arbitration law which, with its prototypes in other states, served as a base for the committee's effort to draft a modern, simplified act. Pirsig, *Some Comments on Arbitration Legislation and the Uniform Act,* 10 Vand. L. Rev. 685, 692 to 699.

"(b) On application, the court may stay an arbitration proceeding commenced or threatened on a showing that there is no agreement to arbitrate. Such an issue, when in substantial and bona fide dispute, shall be forthwith and summarily tried and the stay ordered if found for the moving party. If found for the opposing party, the court shall order the parties to proceed to arbitration.

\* \* \* \* \*

"(e) An order for arbitration shall not be refused on the ground that the claim in issue lacks merit or bona fides or because any fault or grounds for the claim sought to be arbitrated have not been shown."

Section 572.19, subd. 1, provides:

"Upon application of a party, the court shall vacate an award where:

\* \* \* \* \*

"(3) The arbitrators exceeded their powers;

\* \* \* \* \*

"(5) There was no arbitration agreement and the issue was not adversely determined in proceedings under section 572.09 and the party did not participate in the arbitration hearing without raising the objection; \* \* \*."

So far as we can find, the construction and application of these provisions to the question presented is a matter of first impression. There are no legislative records which disclose the specific legislative intent underlying these provisions at the time the act was adopted in this state. However, the records of the National Conference of Commissioners on Uniform Laws, and particularly the writings of the chairman of the subcommittee that undertook the drafting of the act, disclose that the problem of judicial interference with the question of arbitrability was intended to be governed by § 2 of the Uniform Act, now Minn. St. 572.09.[13] Apart from these writings, the language of

---

[13]Pirsig, *The Minnesota Uniform Arbitration Act and the Lincoln Mills Case*, 42 Minn. L. Rev. 333, 346, 348; Pirsig, *Some Comments on Arbitration Legislation and the Uniform Act*, 10 Vand. L. Rev. 685, 692.

§ 572.09(a, b) expressly authorizes a court to interfere and protect a party from being compelled to submit to arbitration proceedings where no arbitration agreement exists, either in fact or because the controversy sought to be arbitrated is not within the scope of the arbitration clause of the contract. Such construction does no violence to the purpose of the act since a party should not be compelled to go to the expense, trouble, and hazard of the arbitration process when he has clearly not agreed to do so. The difficulty lies in applying this rule when the intention of the parties is not clearly expressed. Where the parties are in conflict as to the scope of the provision for arbitration, and the question of the parties' intention as to such scope is reasonably debatable, the problem arises as to whether the court or the arbitrators shall decide the question. We believe in such cases the rule should be, and we hold, that the issue of arbitrability be initially determined by the arbitrators subject to a party's right reserved in § 572.19, subd. 1(3, 5), to challenge such determination subsequent to any award. Such a rule is consistent with the purpose and objectives of the Uniform Act. It would also be more likely to coincide with the intent of the parties who, by failing to precisely delineate the controversies to be arbitrated, probably chose broad language for the purpose of extending arbitration to unforeseeable disputes. To construe § 572.09(a) to authorize a preliminary judicial determination of whether or not the applicant presented an issue referable to arbitration would be to add nonexistent language.

---

The intent of the drafters of the act becomes the legislative intent upon enactment. Only in this manner can uniformity be achieved. Minn. St. 645.22 provides: "Laws uniform with those of other states shall be interpreted and construed to effect their general purpose to make uniform the laws of those states which enact them." See, also, Minn. St. 572.28; People's Savings & Trust Co. v. Munsert, 212 Wis. 449, 249 N. W. 527, 250 N. W. 385, 88 A. L. R. 1306. Where a provision of the uniform state law is ambiguous resort may be had to notes of the commissions. Colby v. Riggs Nat. Bank, 67 App. D. C. 259, 92 F. (2d) 183, 114 A. L. R. 1065; 82 C. J. S., Statutes, § 356. A review of the available notes leaves no doubt that § 572.09 is intended to govern the question of arbitrability and was designed to limit judicial interference in such cases as the one before us.

Such a construction, in many instances, might be destructive of the arbitration clause itself. The contents of the written request for arbitration would take on the aspects of a pleading; and where no evidence was submitted to the court, technicalities never intended to be used in arbitration proceedings could be controlling.

This case illustrates the difficulties of determining the true intent of the parties. We do not have before us any of the facts that most certainly would be presented in submitting the issue of arbitrability to the arbitrators. One of the claims made by plaintiff in its request for arbitration is that defendant withheld information concerning the condition of the soil, thus forcing plaintiff to rely solely on the pre-bidding exploration report of the Minnesota Test Boring Company. The particulars prompting this claim, and the evidence, if any, which may support plaintiff's contention that this is part of the dispute arising "during progress of the work" and "concerning the work," are not before us.[14]

The fact that the act directs the court to "summarily" determine the issue of arbitrability was not intended to foreclose the taking of testimony relevant to that issue where the intent of the parties can be determined from the language of the contract. When that is not possible or even probable, practical considerations alone would, in most cases, indicate that the issue of arbitrability be referable to arbitration.

Minn. St. 572.09(e) reinforces our conclusion. The act intended that arbitrators decide both questions of law and fact.[15] Arbitration is not to be refused because a party seeks to establish that the "claim in issue lacks merit or bona fides or because any fault or grounds for the claim * * * have not been shown." On the preliminary application to compel arbitration a court is barred from examining into the merits of that defense. No such limitation is im-

---

[14]If plaintiff by this claim charges fraud in the inducement of the contract, it might be observed that it is difficult to understand how such a dispute could arise "during progress of the work."

[15]Pirsig, *Some Comments on Arbitration Legislation and the Uniform Act*, 10 Vand. L. Rev. 685, 695.

posed on the court upon application of a party to vacate the award under § 572.19. By express provision the court is directed to vacate the award if the "arbitrators exceeded their powers." These provisions of the act persuasively demonstrate its policy as applied to our problem. If parties voluntarily agree to submit disputes to arbitration, the arbitration process should go forward unimpeded by judicial interference. Where the process has failed to dispose of the controversy, the rights of the parties to litigate the issue of arbitrability is not only unimpaired but both the court and the parties will be immeasurably aided by what has occurred. Where litigation follows arbitration, the cost to the parties is increased and one of the benefits claimed by proponents of arbitration is defeated. However, it must be remembered that this cannot be charged to the act but to the contract over which the parties alone had control.

Defendant argues finally that the contract requires arbitration only if both parties consent. Although the contract uses the word "may" in section 1-23, in section 1-24 it requires that disputes "shall be submitted to arbitration in accordance with the provisions" of the act. Unmistakably, the parties intended that any arbitration would be statutory and not governed by common-law principles. Minn. St. 572.08 expressly declares that an agreement to arbitrate shall be "irrevocable, save upon such grounds as exist at law or in quity for the revocation of any contract."[16] When the parties incorporated the act into their contract, the agreement to arbitrate became irrevocable by force of this section unless the contract expressly provides for revocation. Under principles relating to contracts, a provision reserving the right of revocation is enforceable,[17] and by the language of § 572.08 such a provision in an agreement would be enforceable as an exception to irrevocability. However, we are not persuaded that the terms of the contract before us include any such provision.

Reversed with instructions to enter an order directing the parties to proceed with arbitration.

---

[16]Footnote 5, *supra.*
[17]Raymond v. McKenzie, 220 Minn. 234, 19 N. W. (2d) 423.