**CITY OF BROOKLYN CENTER,**
etc., Respondent,

v.

**MINNESOTA TEAMSTERS PUBLIC AND LAW ENFORCEMENT EMPLOYEES UNION LOCAL NO. 320, its business agent, Lawrence Bastian, et al., Appellants.**

No. 48052.

Supreme Court of Minnesota.

Oct. 13, 1978.

---

Peterson, Bell & Converse and Roger Jensen, St. Paul, for appellants.

Schieffer & Carson and William G. Clelland, Brooklyn Center, for respondent.

Heard before TODD, SCOTT, and GODFREY, JJ., and considered and decided by the court en banc.

OTIS H. GODFREY, Jr., Justice.*

This case involves the validity and constitutionality of a regulation of the Brooklyn Center police department which controls and limits off-duty employment of police officers. The city commenced an action to enjoin Teamsters Local 320 and its members, the sworn personnel of the police department, from contesting the validity of that general order in a grievance proceeding under the collective bargaining agreement. The district court issued a permanent injunction on the grounds that the order regulating off-duty employment was outside the agreement and therefore not subject to arbitration. We affirm.

For a number of years the city of Brooklyn Center has had in effect a general order

* Acting as Justice of the Supreme Court by appointment pursuant to Minn.Const. art. 6, § 2, and Minn.St. 2.724, subd. 2.

governing off-duty employment of its police officers. Under the city's home rule charter, the order was first proposed by the chief of police and after approval by the city manager had the same force and effect as an ordinance. Some time thereafter, the city entered into negotiations with Local 320 of the Teamsters Union as the bargaining representative for the employees and sworn personnel of the police department. The parties entered into a collective bargaining agreement on December 6, 1976, pursuant to the Public Employment Labor Relations Act, Minn.St. 179.61 to 179.76.

The agreement covers such employment conditions as strikes, employees' rights, union dues, grievance procedures, arbitration, seniority, discipline and discharge, work schedules, and other items such as insurance, uniforms, sick leave, and vacation. The following provisions are of particular relevance to these proceedings:

Article VII, paragraph 7.1: "A grievance is defined as a dispute or disagreement as to the interpretation or application of the specific terms and conditions of this AGREEMENT."

Article VII, paragraph 7.5B: "The arbitrator shall be without power to make decisions contrary to, or inconsistent with or modifying or varying in any way the application of laws, rules, or regulations having the force and effect of law. * * * "

Article VIII: "This AGREEMENT is subject to the laws of the United States, the State of Minnesota and the City of Brooklyn Center. * * * "

Article XI: "Employees shall have the rights granted to all citizens by the United States and Minnesota State Constitutions."

A few weeks after the agreement was signed, two police officers requested approval to accept off-duty employment at two liquor establishments in the area. These requests were denied by the Brooklyn Center police administration since the prospective jobs were in violation of General Order 100–24 of the department which provides:

"Officers will not work in any capacity or occupation in any establishment serving or licensed to serve intoxicating liquors. Officers will not work in any capacity or occupation in any on sale establishment serving or licensed to serve nonintoxicating malt liquors which does not have a full menu. The following job categories or occupations do not and will not have administrative approval, including but not limited to:

"a. bartender

"b. bouncer in an establishment serving or licensed to serve intoxicating liquors or nonintoxicating malt liquors

"c. any occupation or employment in a massage parlor, sauna parlor, rap parlor or establishment offering the service of its personnel as models, hostesses, masseuses, masseurs or dates."

Following the denial by the department, the two officers and Local 320 filed a grievance under Article VII of the agreement, based on Article XI, "Constitutional Protection," claiming that the officers were "being treated differently than other citizens and other city employees." The city thereafter commenced an action in Hennepin County District Court which sought judgment declaring General Order 100–24 to be constitutional and enforceable, and an injunction prohibiting defendants from processing as a grievance any question as to the validity of that general order.

■ The law has generally favored arbitration as a speedy and inexpensive method of settling disputes. *Grover-Dimond Associates v. American Arbitration Assn.*, 297 Minn. 324, 211 N.W.2d 787 (1973). This does not mean, however, that it is always to be preferred where legal or constitutional issues are presented to the courts for determination. As this court stated in *Prestressed Concrete, Inc. v. Adolfson & Peterson, Inc.*, 308 Minn. 20, 24, 240 N.W.2d 551, 553 (1976):

" * * * Where arbitration would increase rather than decrease delay, complexity, and costs, it should not receive favored treatment."

The parties here entered into a collective bargaining agreement after many months of negotiation. That agreement is completely silent on the subject of off-duty employment of police officers. It cannot be reasonably argued that the parties intended that Article XI, Constitutional Protection, covers that sensitive matter. The issue of arbitrability when raised in a judicial proceeding is to be determined by ascertaining the intention of the parties from the language of the agreement itself. *State v. Berthiaume*, Minn., 259 N.W.2d 904 (1977). The court should more properly determine such constitutional issues or the existence of a binding agreement, leaving to arbitration fact issues involving breaches or violations of an agreement. As this court stated in *Atcas v. Credit Clearing Corp. of America*, 292 Minn. 334, 341, 197 N.W.2d 448, 452 (1972):

" * * * (1) If the parties evinced a clear intent to arbitrate a controversy arising out of specific provisions of the contract, the matter is for the arbitrators to determine and not the court. (2) If the intention of the parties is reasonably debatable as to the scope of the arbitration clause, the issue of arbitrability is to be initially determined by the arbitrators subject to the rights of either party reserved under Minn.St. 572.19, subd. 1(3, 5). (3) If no agreement to arbitrate exists, either in fact or because the controversy sought to be arbitrated is not within the scope of the arbitration clause of the contract, the court may interfere and protect a party from being compelled to arbitrate (§ 572.09[a, b])."

General Order 100–24 of the police department is not part of the collective bargaining agreement and therefore is not subject to arbitration, which necessarily would decide the validity and constitutionality of that regulation. The order of the trial court is affirmed, and the case is remanded for further hearing in accordance with this opinion.

Affirmed.

TODD, Justice (concurring specially).

I concur in the result. However, I would limit our holding. The parties by Article VII, paragraph 7.5(B), agreed that the arbitrator shall be without power to make decisions affecting rules or regulations. This is precisely what is before us. The courts, while supportive of the arbitration process, should not use vague general clauses to override specific provisions of an arbitration agreement.

The disposition I would prefer avoids surfacing the broad issues raised in attempting to resolve the import of Article IX. I express my reservations concerning agreements which seek to transfer the resolution of fundamental constitutional rights out of the court system where they have traditionally been resolved.

SCOTT, Justice (dissenting).

This action is brought under an employment contract that provides for arbitration of grievances. Grievances are spelled out in the contract to include claimed constitutional violations. A violation of equal protection is claimed under this contractual clause and arbitration is asked. Where the parties, such as these, indicate a clear intent to arbitrate controversies arising out of contractual provisions, the matter is properly determined by the arbitrator. See, Minn.St. 572.08–.09 and *State v. Berthiaume*, Minn., 259 N.W.2d 904 (1977), wherein we stated:

"It is also clear, and we hold, that the Uniform Arbitration Act, Minn.St. c. 572, governs the authority and procedure for judicial interference with the arbitration process under either a private sector or public sector collective bargaining agreement containing an arbitration clause between 'employers and employees or between their respective representatives unless otherwise provided in the agreement.' Minn.St. 572.08. Although the uniform act is not expressly made applicable in PELRA, we find no statute expressing any contrary legislative intent." Minn., 259 N.W.2d 909.

Under this statutory and case law, it seems perfectly clear that the present grievance is

initially subject to arbitration before the court's jurisdiction is invoked. Even from a less legalistic view, there seems to be no practical reason why arbitration should not apply under a general "equal protection" clause of the contract when an order is issued pinpointing police department personnel only, where it very well may be equally applicable to other city departments in its attempt to alleviate some purported conflict of interest.

Furthermore, public policy favors arbitration and the speedy resolution of disputes without initial resort to litigation in our courts. *Layne-Minnesota Co. v. Regents of University of Minnesota*, 266 Minn. 284, 123 N.W.2d 371 (1963). The parties to the present controversy have spent valuable time fighting arbitration, thus defeating the entire purpose of the arbitration procedure provided for, when the case may very well have been settled if arbitration had not been resisted.

For these reasons, I respectfully urge that the majority follow precedent as clearly enunciated in *Berthiaume, supra.*

ROGOSHESKE, Justice (dissenting).

I join in the dissent of my brother Scott and add these comments. The language of the pertinent provision of the collective bargaining agreement clearly shows the parties' intent to arbitrate grievances concerning claimed denial of constitutional rights. Although it is a most unusual provision, and perhaps one which as a practical and consti-

tutional matter cannot be made the subject of binding final arbitration as contemplated by Minn.St. 179.70, subd. 1, there appears to be no statute prohibiting arbitration of such controversy. In obedience to statutory limitations imposed upon public sector arbitration by § 179.72, subd. 7, by the express provision of Article VII, paragraph 7.5(B), and Article VIII of the collective bargaining agreement, the arbitrator is bound by established judicial standards in resolving constitutional issues.[1] Challenges to the arbitrator's adherence to such standards may be raised following the arbitration process in proceedings to vacate an award pursuant to § 572.19, subd. 1(3), of the Uniform Arbitration Act.

But that is not the issue presented. It is simply whether the parties expressed a clear intention to arbitrate the constitutional dispute. I would hold they did and permit arbitration to proceed.

YETKA, Justice (dissenting).

I join in the dissent of Mr. Justice Scott.

WAHL, J., took no part in the consideration or decision of this case.

---

1. Article VII, paragraph 7.5(B), provides: "The arbitrator shall be without power to make decisions contrary to, or inconsistent with or modifying or varying in any way the application of laws, rules, or regulations having the force and effect of law.   *   *   *"

Article VIII provides: "This AGREEMENT is subject to the laws of the United States, the State of Minnesota and the City of Brooklyn Center.   *   *   *"