Gregory McGRATH, et al., Appellants,

v.

STATE of Minnesota, et al., Respondents.

No. 51626.

Supreme Court of Minnesota.

Nov. 20, 1981.

Lauhead & Morrow and George T. Morrow, II, Minneapolis, for appellants.

Warren Spannaus, Atty. Gen., and Brad P. Engdahl, Sp. Asst. Atty. Gen., St. Paul, for respondents.

TODD, Justice.

Appellants are security guards at the State Prison. Following an escape, certain guards were disciplined. The appellants-guards all called in sick on January 13, 1980. Following investigation by the attorney general, the appellants were disciplined for abuse of sick-leave privileges. A grievance was filed on their behalf which was arbitrable under the guards' union contract. At the same time, litigation was commenced in district court, alleging various violations of the guards' constitutional rights and also seeking damages under 42 U.S.C. § 1983 (1976). The trial court dismissed the action on the ground of failure to exhaust administrative remedies and on the further ground that the defendant-state officials were immune from a suit for monetary damages. We affirm as to the exhaustion issue, but reverse as to the immunity issue.

On December 13, 1979, Robert Miller, an inmate at Stillwater Prison escaped. Because of the escape, a number of guards, now appellants here, were suspended without pay. Thereafter, the union filed grievances on behalf of the suspended guards. Most of the guards disciplined for the escape were from the third watch which be-

gins at 2:30 p. m. and ends at 10:30 p. m. Apparently these suspensions caused extremely hard feelings among the guards who made up the third watch.

On January 13, 1980, a large number of the members of the third watch called in sick, allegedly in protest for the earlier suspensions resulting from the Miller incident. In order to determine whether the 22 guards who called in sick should be disciplined for that action, a factfinding investigation took place between January 14 and 19, 1980. Each of the 22 guards was interviewed by a member of the Department of Corrections and an assistant attorney general. The interviews were recorded on tape. The investigation resulted in the discipline of 18 guards for abuse of their sick-leave privileges.

After the disciplinary action was taken, the guards petitioned their union to commence grievance procedures and they also brought this action in Ramsey County District Court. The appellants' complaint in district court alleged 13 causes of action on behalf of both individual guards and the disciplined guards as a group.

The complaint alleged that the guards had been deprived of their civil rights under color of state law, invoking 42 U.S.C. § 1983 (1976). It also alleged violations of the Minnesota Government Data Practices Act, Minn.Stat. §§ 15.1611–.1698 (1980) and the Minnesota Public Employment Labor Relations Act (PELRA), Minn.Stat. §§ 179.-61–.76 (1980). Finally, the complaint alleged violations of the labor agreement in force between the Department of Corrections and the guards.

The first four causes of action allege that appellants' rights were violated by the investigation conducted after the sick-out because they were not given the right to counsel or notice of their other due process rights. The fifth, sixth, and seventh causes of action allege that the guards suspended after the Miller escape suffered violations of their rights under the Data Practices Act when the warden revealed their identities and the discipline they received to the news media. Violations of the labor agreement

and of the guard's constitutional rights to due process and equal protection were also alleged. The eighth, ninth, and tenth causes of action allege that plaintiffs Dale and Duane Fogerty, third watch shop stewards, suffered violations of their rights under the agreement, and PELRA, and their constitutional rights to free speech, due process, and equal protection when they were reprimanded for making critical comments about prison procedures in front of outsiders. The eleventh cause of action alleged that one of the guards, Gregory McGrath, suffered violations of his rights under the labor agreement and his constitutional rights to due process and equal protection when disparaging comments were made about his work performance by one of his supervisors. The twelfth cause of action alleged that one of the guards, Kenneth Erickson, was deprived of his rights under the labor agreement and his constitutional rights to due process and equal protection when his salary increase date was moved backward as a result of discipline he received for violation of the prison's inmate-handling rules. The final cause of action alleges that the guards were deprived of their rights under the labor agreement and were subjected to "severe physical and psychic injury and extreme mental anguish, pain and suffering, including but not limited to humiliation, loss of good opinion of family, friends and co-workers and of their professional reputations before the general public * * *", because certain sections of the labor agreement were interpreted so as to obstruct the prosecution of claims under the agreement.

The trial judge first concluded that all of the allegations in the complaint clearly came within the collective bargaining agreement. Therefore, the judge reasoned that appellants should first be required to exhaust the labor contract grievance procedure. Second, the trial judge stated that since respondents were acting in their discretionary capacity they were immune from liability for monetary damages. Finally, the trial judge concluded that appellants had failed to state a cause of action under the Data Practices Act. Therefore, the appellants' complaint was ordered dismissed.

After the claims were dismissed, the matter proceeded to arbitration pursuant to the collective bargaining agreement. Since appellants ask the court to take judicial notice of the award and respondents have included it in their appendix, there seems no reason to ignore the award. After hearing extensive evidence, the arbitrator concluded that appellants had abused their sick leave privileges. Therefore, the arbitrator concluded that the respondents had just cause to discipline appellants.

ISSUES:

Appellants, in their brief, have limited this appeal to the following issues:

1. Did the trial court err in dismissing appellants' complaint for failure to exhaust the labor contract grievance procedures?

2. Did the trial court err in holding that respondents are immune from an award of monetary damages because they were acting in their discretionary capacity?

1. The appellants contend that since they have alleged constitutional issues in their complaint, the arbitration process should have been stayed. At the outset, it should be noted that the only reason there are constitutional questions raised by this case is that the state is one of the parties to the labor contract. This, of course, provides the state action necessary for an allegation of unconstitutional conduct on the part of the respondents. This problem was noted by the Second Circuit Court of Appeals in *Connecticut State Federation of Teachers v. Board of Education Members*, 538 F.2d 471, 478 (2d Cir. 1976):

> This case presents the all-too-familiar situation in which a dispute, commonplace in the private sector, becomes constitutional litigation by virtue of the fact that public employers (the school boards) are involved, rather than private entities, and the plaintiffs are, therefore, able to turn a problem of labor relations into a constitutional issue. Mindful of the undesirability of becoming entangled in the operation of local school systems, we nevertheless must address this case in a constitutional, rather than a private-law, framework. Despite its constitutional

gilding, however, this case involves us, to paraphrase Chief Judge Kaufman, in the "unwelcome" task of "meddling in an intramural fray" among two teachers unions and their board of education employers. *Fuentes v. Roher*, 519 F.2d 379, 381 (2 Cir. 1975).

Appellants rely on two Michigan Court of Appeals cases which held that the vindication of a constitutional right need not await the exhaustion of labor contract grievance procedures, *Kewin v. Board of Education*, 65 Mich.App. 472, 237 N.W.2d 514 (1975), and *Barry v. Flint Fire Department*, 44 Mich.App. 602, 205 N.W.2d 627 (1973).

 We decline to adopt the Michigan rule and instead adopt the federal rule which is more restrictive. In *E. I. DuPont de Nemours & Co. v. F.T.C.*, 488 F.Supp. 747, 753 (D.Del.1980), the court stated:

> The rule in this Circuit is that a failure to exhaust may be excused when the complaining party can show that an administrative agency has taken some action which clearly and unambiguously violates the complaining party's constitutional rights.

Under this rule, a mere allegation of a constitutional deprivation is not sufficient to avoid the exhaustion requirement. *See First Jersey Securities, Inc. v. Bergen*, 605 F.2d 690, 697 (3d Cir. 1979), *cert. denied*, 444 U.S. 1074, 100 S.Ct. 1020, 62 L.Ed.2d 756 (1980). The complaint in this case contains a number of alleged constitutional violations, but in reality these are only violations of the collective bargaining agreement. There is no action alleged which clearly and unambiguously violates the complaining parties' constitutional rights. The due process violation relating to the investigation by the attorney general as to prearbitration intervenors has recently been considered by the Washington, D. C. Circuit Court of Appeals. In *Cook Paint & Varnish Co. v. NLRB*, 648 F.2d 712, 720 (D.C.Cir. 1981), the court stated:

> [P]rearbitration interviews are a matter of routine practice in many sectors of industrial relations. In these sectors, in-

vestigatory interviews are conducted by advocates in preparation for a pending arbitration without any infringement of protected employee rights.

In this case, the investigation produced the discipline which led to the grievance procedure. We see no distinction nor do we find the procedures used were violative of employee rights.

■ The fact that we decline to interfere with the arbitration process does not confer upon the arbitrator the right to decide constitutional issues. We have already indicated that arbitrators are without such authority in Minnesota. *See City of Richfield v. Local No. 1215, Etc.,* 276 N.W.2d 42, 51 (Minn.1979). We now expressly hold this to be the rule in Minnesota irrespective of the language of the arbitration agreement. In the normal case, where the constitutional violations alleged are of a general nature, the arbitrator is to proceed. The alleged constitutional violations may be raised at the time of judicial review of the arbitration determination. In this case, with an inappropriate attempt to stay the arbitration proceedings that was rejected by the trial court, the constitutional issues may be considered by the trial court on remand or consolidated with an appeal, if any, from the arbitrator's findings.

■ 2. The trial court found the defendants to be immune under section 1983 without a factual determination. This holding contravenes the decisions of the United States Supreme Court which has stated on numerous occasions that government officials are entitled to a good faith immunity from suit under section 1983. *See Procunier v. Navarette,* 434 U.S. 555, 98 S.Ct. 855, 55 L.Ed.2d 24 (1978) (qualified immunity for prison officials and officers). Recently, the Court stated: "[O]ur finding of § 1983 immunity 'was predicated upon a considered inquiry into the immunity historically accorded the relevant official at common law and the interests behind it.'" *Owen v. City of Independence,* 445 U.S. 622,

638, 100 S.Ct. 1398, 1409, 63 L.Ed.2d 673 (1980) (quoting *Imbler v. Pachtman,* 424 U.S. 409, 421, 96 S.Ct. 984, 990, 47 L.Ed.2d 128 (1976)). Without an analysis of the type of immunity to which the respondents are entitled, and a factual determination that their activity fits within the immunity, the trial court erred in holding that respondents were immune from suit based on the discretionary nature of their activities.[1]

■ We next proceed to the burden of proof in such a factual consideration. As indicated by the United States Supreme Court in *Dennis v. Sparks,* 449 U.S. 24, 29, 101 S.Ct. 183, 187, 66 L.Ed.2d 185 (1980), "the burden is on the official claiming immunity to demonstrate his entitlement." Although the *Dennis* case deals with the liability of private parties, it seems clear that the Court's statement was intended to be one of general application. In making the factual determination of the official's good faith, the court may consider the factual findings and legal conclusions of the arbitrator but is not bound by these determinations. *See Alexander v. Gardner-Denver Co.,* 415 U.S. 36, 94 S.Ct. 1011, 39 L.Ed.2d 147 (1974).

Affirmed in part, reversed in part, and remanded to the district court for further proceedings consistent with this opinion.

The petition for rehearing is denied.

The original opinion filed on August 14, 1981 be and hereby is withdrawn.

SCOTT, Justice (concurring specially).

I concur in the result reached by the majority; however, I do not agree that an arbitrator may never have the authority to decide constitutional issues. An arbitrator's authority to decide any type of grievance should depend on the scope of the arbitration agreement. If the parties indicate a clear intent to arbitrate disputes of a constitutional dimension, such matters should be determined by an arbitrator. As this

1. This factual determination may be in the form of a summary judgment based on the record or upon an evidentiary hearing.

court stated in *Atcas v. Credit Clearing Corp. of America*, 292 Minn. 334, 197 N.W.2d 448 (1972):

> (1) If the parties evinced a clear intent to arbitrate a controversy arising out of specific provisions of the contract, the matter is for the arbitrators to determine and not the court. (2) If the intention of the parties is reasonably debatable as to the scope of the arbitration clause, the issue of arbitrability is to be initially determined by the arbitrators subject to the rights of either party reserved under Minn.St. 572.19, subd. 1(3, 5). (3) If no agreement to arbitrate exists, either in fact or because the controversy sought to be arbitrated is not within the scope of the arbitration clause of the contract, the court may interfere and protect a party from being compelled to arbitrate (§ 572.-09[a, b]).

*Id.* at 341, 197 N.W.2d at 452.

When the state is a party to a labor contract, grievances are often raised as constitutional issues. To hold that arbitrators may never consider such issues would circumvent the public policy which favors arbitration and the speedy resolution of disputes without initial resort to litigation. *See Layne-Minnesota Co. v. Regents of University of Minnesota*, 266 Minn. 284, 123 N.W.2d 371 (1963).

For this reason arbitrators should have authority to decide constitutional issues if the parties indicate such an intent, consistent with our holding in *Atcas, supra. See also City of Brooklyn Center v. Minnesota Teamsters Public & Law Enforcement Employees Union Local No. 320*, 271 N.W.2d 315 (Minn.1978).