The **TRAVELERS INDEMNITY COMPANY, Respondent,**

v.

**HAYES CONTRACTORS, INC., Appellants.**

No. C9–86–141.

Court of Appeals of Minnesota.

June 24, 1986.

M.T. Fabyanske, David D. Hammargren, Fabyanske, Svoboda and Westra, P.A., St. Paul, for respondent.

Jon G. Sarff, Elmquist and Sarff, P.A., Minneapolis, for appellants.

Heard, considered and decided by SEDG-WICK, P.J., and PARKER and FORS-BERG, JJ.

## OPINION

FORSBERG, Judge.

This is an appeal from an order staying arbitration proceedings demanded by a subcontractor, appellant Hayes Contractors, against the defaulting contractor's surety, respondent Travelers Indemnity. We affirm.

## FACTS

The Voronyak Construction Company entered into a general contract with the St. Paul School District in 1984 to construct an addition to the St. Paul AVTI. Voronyak had used respondent Travelers Indemnity as a surety on a number of its projects, and Travelers provided the District a performance and payment bond. Appellant Hayes was awarded the mechanical, electrical and utilities subcontract, and later took over the sheet metal subcontract. The entire project was to be completed for occupancy at the beginning of the 1985 fall quarter.

On May 21, 1985, Voronyak defaulted on the project. Voronyak subsequently authorized Travelers to complete the project. By a General Agreement of Indemnity previously executed, Voronyak had assigned to Travelers, in the event of its own default,

all of [its] rights under the contract, including [its] right, title and interest in and to all subcontracts let in connection therewith * * * *.

Travelers chose to undertake the completion of the project, and hired a completing contractor, to whom it assigned the subcontracts. Appellant Hayes refused to recognize the assignment, or the substitution of general contractors. Hayes notified the other parties that it continued to look to Voronyak and Travelers, as surety, for payment of the subcontract, and that the completing contractor should assume responsibility for "delay damages" to Hayes caused by Voronyak's default.

An accelerated construction schedule was imposed in order to complete the project on time. Travelers denied any liability to Hayes for its costs associated with the delay and subsequent acceleration. In order to ensure timely completion, Travelers did agree to guarantee payment of Hayes' "direct expenses" associated with the accelerated work schedule.

Following project completion, Hayes filed a demand for arbitration, pursuant to its subcontract, seeking arbitration of its "direct damages" due to the delay and acceleration.

The subcontract generally incorporated the arbitration provisions of the general contract. It obligated Hayes as follows:

11. To be bound to the Contractor by the terms of the General Contract * * * and to assume toward the Contractor all

the obligations and responsibilities that the contractor assumes in and by the General Contract toward the owner * *.

It bound the contractor to arbitration in the following terms:

> E. If arbitration of disputes is provided for in the General Contract, any dispute arising between the Contractor and the Subcontractor * * * shall be settled by arbitration in the manner provided for in the General Contract.

The General Contract consisted of the standard, printed AIA construction contract, altered and expanded by "Supplementary Conditions," apparently drafted by the parties. The AIA contract provides for arbitration "unless the parties mutually agree otherwise." The supplementary conditions, however, added the owner's [District's] consent as a condition precedent to arbitration. The arbitration provision thus read:

> *If the Owner consents* [a]ll claims, disputes and other matters in question between the Contractor and Owner arising out of, or relating to, the Contract Documents * * * shall be decided by arbitration * * * unless the parties mutually agree otherwise.

(Emphasis added).

Travelers brought this statutory action to stay the arbitration proceedings, claiming it had never agreed to arbitration. *See* Minn.Stat. § 572.09(b). The trial court found no agreement to arbitrate, under either the subcontract or the performance bond.

## ISSUES

1. Did the subcontract contain an agreement to arbitrate?

2. Did the trial court err in determining appellant was not subject to any agreement to arbitrate found in the subcontract?

## ANALYSIS

*1. Agreement to arbitrate*

Hayes asserts a right to arbitrate its damages with Travelers as assignee of the general contractor, rather than in its position as surety on the performance bond. This claim presupposes an arbitration clause in the contract to which Travelers may be bound.

Arbitration is solely a matter of contract. *Twin City Monorail, Inc. v. Robbins & Meyers, Inc.*, 728 F.2d 1069, 1072 (8th Cir. 1984). The Uniform Arbitration Act provides:

> On application, the court may stay an arbitration proceeding commenced or threatened on a showing that there is no agreement to arbitrate.

Minn.Stat. § 572.09(b) (1984). The supreme court has stated:

> [T]he basic intent of the act is to discourage litigation and to foster voluntary resolution of disputes in a forum created, controlled, and administered by the written agreement. Thus, contracting parties, desiring to avail themselves of the benefits of arbitration, retain control over the arbitration process by the language of their agreements.

*Layne-Minnesota Co. v. Regents of the University of Minnesota*, 266 Minn. 284, 288, 123 N.W.2d 371, 375 (1963).

The supreme court in *Layne-Minnesota* held that arbitration did not require the consent of the owner and the contractor although a provision in the contract stated that the particular type of decision involved "may be submitted to arbitration." *Id.* at 287, 123 N.W.2d at 374 (decision of architect or engineer). The court relied on a separate provision in the contract requiring that "[a]ll disputes, claims or questions subject to arbitration under this contract shall be submitted to arbitration * * * *." *Id.* The dispute, over a change order request, was submitted to the engineer. The court, however, held that there was an agreement to arbitrate. *Id.* at 293, 123 N.W.2d at 377–78.

Here the contract, explicitly amending the printed arbitration clause, required the consent of the owner before disputes would be arbitrated. Unlike *Layne-Minnesota*, there is no separate provision requiring

that all disputes under the contract be submitted to arbitration.

In construing contracts, the law does not presume that the parties have intended to create a condition precedent to a contractual duty, particularly a condition requiring the satisfaction or consent of a party. 3A *Corbin on Contracts* § 635 (1960), *see also Steller v. Thomas*, 232 Minn. 275, 283, 45 N.W.2d 537, 542 n. 8 (1950) (if doubtful, contract should be construed as requiring satisfaction of a reasonable person rather than of the party to the contract). The parties to the general contract here, however, expressly provided such a condition precedent to the duty to arbitrate. *See* 3A *Corbin on Contracts* § 639 (1960) (promissor's duty is expressly conditional if modified by a conditional clause). Moreover, they did so by modifying language in a printed form. *See Danelski v. King*, 314 N.W.2d 818, 820 (Minn.1981) (written language controls over printed form in the event of inconsistency). They could not have more clearly expressed an intent to make the duty to arbitrate a conditional one.

The subcontract extended a duty to arbitrate only insofar as such a duty was provided in the general contract. In the subcontract, the contractor, whose obligations Travelers allegedly assumed as assignee, stood in the same position as the owner in the general contract. Thus, Travelers had no duty to arbitrate unless it consented to submission of a dispute to arbitration.

*2. Assumption of a duty to arbitrate*

Since the arbitration clause as incorporated into the subcontract required the contractor's consent, there was no duty to arbitrate for Travelers to assume as assignee. Therefore, we need not address the issue of whether the assignment effected such an assumption.

### DECISION

The trial court did not err in staying arbitration.

Affirmed.