**SUNKIST GROWERS, INC., a corporation, Plaintiff,**

v.

**FEDERAL TRADE COMMISSION, Michael Pertschuk, Paul Rand Dixon, Elizabeth Hanford Dole, David A. Clanton, and Robert Pitofsky, Defendants.**

No. CV 78–4057–RJK.

United States District Court, C. D. California.

Jan. 26, 1979.

A. James Roberts, III, Raymond C. Fisher, Harold J. Kwalwasser, Tuttle & Taylor Inc., Los Angeles, Cal., Dale V. Cunningham, Van Nuys, Cal., for plaintiff.

Andrea Sheridan Ordin, U. S. Atty., Michael E. Wolfson, Asst. U. S. Atty., Los Angeles, Cal., for defendants.

## MEMORANDUM OF DECISION AND ORDER

KELLEHER, District Judge.

The plaintiff, Sunkist Growers, Inc. (a Capper-Volstead Act Agricultural Cooperative) filed its verified complaint for declaratory and injunctive relief on October 29, 1978. That complaint accused the defendants, the Federal Trade Commission ("FTC") and its individual commissioners, of operating in excess of their statutory jurisdiction in entertaining an FTC complaint against Sunkist. That FTC complaint alleged that Sunkist has violated Section 5 of the Federal Trade Commission Act (15 U.S.C. § 45) by monopolizing certain markets for fresh lemons, oranges, and lemon products, and by entering into exclusive dealing arrangements with certain packing houses.

The gravamen of this asserted lack of jurisdiction was that the Capper-Volstead Act (7 U.S.C. §§ 291 and 292) and Section 6 of the Clayton Act (15 U.S.C. § 17) vest exclusive jurisdiction with the Secretary of Agriculture over any antitrust or antitrust-related activities of Capper-Volstead Cooperatives. In the alternative, the plaintiff alleges that the doctrine of primary jurisdiction requires the Secretary of Agriculture to act or fail to act prior to the FTC's interfering with such a cooperative.

The defendant opposes plaintiff's request for preliminary and permanent injunctive relief. This opposition rests on several grounds:

(a) The Congress conferred exclusive jurisdiction on the Court of Appeals to review rulings of the FTC;

(b) The plaintiff has failed to exhaust its administrative remedies, and hence, this Court has no jurisdiction;

(c) The FTC's action was not "final agency action" as that term is defined in 5 U.S.C. § 704; and

(d) The Capper-Volstead Act does not deprive the FTC of jurisdiction in the instant case.

Pursuant to Fed.R.Civ.P. 65(a)(2), the parties have stipulated that this hearing shall stand as the trial on the merits.

Because the first three asserted bases for denial question the jurisdiction of this Court, they are considered at the outset. The Court's review of the briefs and applicable law indicates that it does have jurisdiction over the instant matter. Second, the Court turns to the merits of plaintiff's argument. The Court finds that the Capper-Volstead Act vests neither exclusive nor primary jurisdiction in the Secretary of Agriculture, and hence the plaintiff's application for injunctive and declaratory relief should be, and is, denied.

## A. JURISDICTIONAL ISSUES

1. *Whether the Court of Appeals is the Exclusive Forum for Appeals from FTC*

■ Defendants argue that "[t]he provisions for judicial review of Commission orders in proceedings under Section 5 [of the Federal Trade Commission Act] are explicit: subsection 5(c) provides for direct review in a Court of Appeals of a final Commission order . . . ; subsection 5(g) provides that any such order is automatically stayed upon the timely filing of a petition to review; and subsection 5(d) states that 'the jurisdiction of the court of appeals to affirm, enforce, modify, or set aside orders [of the Commission] shall be exclusive.' The Act nowhere provides for review in the district courts of preliminary rulings of the Commission; instead, they clearly contemplate that 'exclusive' judicial review shall be by direct review in the court of appeals . . . ." However, the defendant tacitly admits that this contention is unsound when it later states that "it has long been held that district courts *ordinarily* lack jurisdiction to grant [the relief here requested]."

As Judge Friendly of the Second Circuit has noted

> [a]lthough the [FTC Act] limits review by a court of appeals to 'any person, partnership, or corporation required by an order of the Commission to cease and desist,' . . . we agree with appellants that the fact that the order here assailed is not one requiring [the appellant] to cease and desist from anything does not lead inexorably to the conclusion that it is not reviewable, but only that it is not reviewable by petition to a court of appeals. * * * Whether it was reviewable by suit in a district court depends on [whether the order constitutes "final agency action" for which there is no other adequate remedy, within the context of the Administrative Procedure Act].

Pepsico, Inc. v. FTC, 472 F.2d 179, 185 (2d Cir. 1972), *cert. denied,* 414 U.S. 876, 94 S.Ct. 44, 38 L.Ed.2d 122 (1973) (citations omitted).[1] *But see Seven-Up Co. v. FTC,* 478 F.2d 755 (8th Cir.), *cert. denied,* 414 U.S. 1013, 94 S.Ct. 379, 38 L.Ed.2d 251 (1973); *Coca-Cola Co. v. FTC,* 475 F.2d 299 (5th Cir.), *cert. denied,* 414 U.S. 877, 94 S.Ct. 121, 38 L.Ed.2d 122 (1973); W. Gellhorn & C. Byse, *Administrative Law* 248–251 (1974). The Court finds that appellate jurisdiction does not always rest exclusively with the Court of Appeals. Rather, this Court must further determine (1) whether the plaintiffs have exhausted their administrative remedies; and (2) whether the action taken was "final agency action." It is to these issues the Court now turns. In embarking on the analysis, however, Judge Friendly's admonition is highly persuasive:

> The real question is under what circumstances the court should review an order which, in Mr. Justice Brandeis' famous phrase, "does not command the carrier to do, or to refrain from doing, anything; which does not grant or withhold any authority, privilege, or license; which does not extend or abridge any power or facility; which does not subject the carrier to any liability, civil or criminal; which does not change the carrier's existing or future status or condition; which does not determine any right or obligation." *United States v. Los Angeles & S. L. R. R.,* 273 U.S. 299, 309–310, 47 S.Ct. 413, 71 L.Ed. 651 (1927), . . . .

*Pepsico, Inc. v. FTC, supra,* at 186 n.7.

2. *Has Plaintiff Exhausted Administrative Remedies?*

Some background is necessary to understand these issues. The FTC issued its complaint on May 31, 1977. On December 15, 1977, the plaintiff moved for a dismissal of the complaint, on jurisdictional grounds. The Administrative Law Judge denied this motion to dismiss on February 7, 1978, and,

---

1. *See also* 3 K. Davis, *Administrative Law Treatise* § 20.05 (1958 ed.), discussing *Isbrandtsen v. United States,* 93 U.S.App.D.C. 293, 211 F.2d 51 (1958), where the dissenting opinion "did not deny that the plaintiff was entitled to relief [from an interlocutory order] but argued that the appropriate form of proceeding was an injunction suit in the district court." *Id.*

on February 23, 1978, gave the plaintiffs herein permission to seek interlocutory review by the Federal Trade Commission. *See* 16 C.F.R. § 3.23(b). Section 3.23(b) provides that interlocutory review by the Commission rests with the Commission's discretion. On May 15, 1978, the Commission declined interlocutory review of the Administrative Law Judge's jurisdictional ruling, because Sunkist "failed to raise an issue as to which there is substantial ground for difference of opinion." The instant action was then commenced in this Court by Sunkist.

These facts indicate that the plaintiff has pursued its agency remedies diligently and fully up to this point. The defendants nonetheless contend that the plaintiff has failed to exhaust its administrative remedies, and thus, this Court is without jurisdiction to entertain the action.

█ To begin, it is a "long settled rule of judicial administration that no one is entitled to judicial relief for a supposed or threatened injury until the prescribed administrative remedy has been exhausted." *Myers v. Bethlehem Shipbuilding Corp.,* 303 U.S. 41, 50, 58 S.Ct. 459, 463, 82 L.Ed. 638 (1937). The doctrine is applicable to questions involving agency jurisdiction, *Myers v. Bethlehem Shipbuilding Corp., supra,* whether those questions focus on jurisdictional facts, *Lone Star Cement Corp. v. FTC,* 339 F.2d 505 (9th Cir. 1964), or purely legal questions involving the ambit of an agency's jurisdiction, *Casey v. FTC,* 578 F.2d 793 (9th Cir. 1978); *California ex rel. Christensen v. FTC,* 549 F.2d 1321 (9th Cir.), *cert. denied,* 434 U.S. 876, 98 S.Ct. 227, 54 L.Ed.2d 156 (1977). The rule is one of judicial economy and judicial deference to the supposedly-superior expertise of administrators, and merely requires that a party pursue all available remedies within the agency prior to turning to the courts of the United States for assistance.

A careful examination of the cases relied upon by the defendant for its assertion that the plaintiff has not exhausted its administrative remedies reveals their dissimilarity. In *Lone Star, supra,* the plaintiff's jurisdictional attack was premised on certain factual assertions that had yet to be litigated by the FTC. The Ninth Circuit thus declined review. In *California ex rel. Christensen v. FTC, supra,* the Ninth Circuit found no exhaustion because the plaintiff filed suit to enjoin the administrative proceedings immediately after the FTC complaint was filed; the agency was never given an opportunity to consider the question of its own jurisdiction prior to the attempted review in the courts of the United States. Although *Casey v. FTC* is unclear, it appears that a 16 C.F.R. § 3.23(b) appeal was *not* there undertaken from the ruling of the administrative law judge. Finally, in *Crown-Zellerbach v. FTC,* 156 F.2d 927 (9th Cir. 1946), the plaintiff's motion to dismiss for want of agency jurisdiction was denied "without prejudice" and no appeal was taken from that decision within the agency.

█ In contrast, the plaintiff here fully litigated the jurisdictional issue within the agency. Further, the question of agency jurisdiction here does not turn on the resolution of factual issues, but is purely a question of law. If there was doubt that the FTC might, on full review of the Administrative Law Judge's final decision, reverse itself, the fact that it declined discretionary review because it thought there was "no substantial ground for difference of opinion" seems to negate such doubt.[2] And finally, the FTC should not, by its own decision to decline review, claim that administrative remedies have not been exhausted. Agency *in*action is, in appropriate circumstances, just as final as agency action. *Cf. Environmental Defense Fund v. Hardin,* 138 U.S.App.D.C. 391, 428 F.2d 1093

**2.** In *Alexander v. Yale University,* 459 F.Supp. 1 (D.Conn.1977), the court observed that "ordinarily beneficial and fair requirements of administrative exhaustion should not be imposed absent realistic possibility of a meaningful remedy." *Id.* at 6. Here, the agency's denial of discretionary review, for the reasons stated, indicates that any appeal of the jurisdictional issue following the entry of a cease-and-desist order—should one emerge—would not be a realistically meaningful exercise.

(1970); Goldman, *Administrative Delay and Judicial Review*, 66 *Mich.L.Rev.* 1423 (1968). To conclude, the plaintiff has made every required and desirable effort to litigate the matter before the Federal Trade Commission. The policies underlying the exhaustion doctrine (*i. e.* judicial economy and utilization of administrative factfinding and expertise) have been realized to the fullest extent possible. The plaintiff has exhausted its administrative remedies.

### 3. Was This "Final Agency Action"?

█ In addition to the "judicial gloss" imposed by the doctrine of exhaustion of administrative remedies, discussed above, the plaintiff must satisfy the requirements of the Administrative Procedure Act (5 U.S.C. § 551 *et seq.*) if it is to properly obtain review of the Federal Trade Commission's action. Section 10(c) of the Administrative Procedure Act (5 U.S.C. § 704) governs the question of reviewable agency action:

> Agency action made reviewable by statute and final agency action for which there is no other adequate remedy in a court are subject to judicial review. A preliminary, procedural, or intermediate agency action or ruling not directly reviewable is subject to review on the review of the final agency action.

*Id.* The impact of this statute on interlocutory appeals is straightforward: although a plaintiff may have exhausted its administrative remedies, the Administrative Procedure Act proscribes piecemeal review of administrative action unless (*1*) that action is made reviewable by statute; or (*2*) the action is "final agency action for which there is no other adequate remedy." Because no statute authorizes review by courts of the United States in this situation, the Court must consider whether there has been final agency action for which there is no adequate remedy.

The "no adequate remedy" requirement has been interpreted by courts as a requirement that some form of irreparable harm be demonstrated by a plaintiff seeking interlocutory relief. Even where administrative remedies have been exhausted, inter-

locutory review has been denied. The bulk of the cases denying appeals focus on administrative subpoenas or other agency discovery. There, of course, irreparable harm would be properly alleged only in the most extreme case. Here, however, FTC assertion of jurisdiction is claimed by the plaintiff to have sweeping, extra-legal effects beyond the power of any court to correct or adequately remedy. These allegations are sufficient to enable the Court to take jurisdiction and consider whether it should issue injunctive and declaratory relief.

Judge Friendly indicated in *Pepsico, Inc. v. FTC, supra,* that as a general principle "one can find 'final agency action for which there is no other adequate remedy in a court' if an agency refuses to dismiss a proceeding that is plainly beyond its jurisdiction as a matter of law or is being conducted in a manner that cannot result in a valid order." *Id.* at 187. The *Pepsico* opinion went on to note that although the expense to the plaintiff of defending an administrative proceeding is not enough to justify intervention (*see Myers v. Bethlehem Shipbuilding Corp., supra*) the injury a court protects in allowing an appeal in this case is (*1*) the enormous waste of governmental resources and (*2*) the continuing threat of a complete restructuring of any industry. The plaintiff in the instant case alleges both. It might be added that additional, irreparable harm exists whenever the relationship between two federal statutes is upset or altered by recent agency action. And finally, the plaintiff alleges that its membership rolls are dropping because of the uncertainty generated by the FTC's action in the instant case, impeding its ability to conduct business. Taken together, these four factors demonstrate that the FTC action fits within the second qualification to § 10(c) of the Administrative Procedure Act. This Court has jurisdiction.

### B. THE FTC'S JURISDICTION

1. *The Capper-Volstead Act Does Not Give the Secretary of Agriculture Exclusive Jurisdiction Over Agricultural Cooperatives*

Section 5 of the Federal Trade Commission Act (15 U.S.C. § 45) states that

"[u]nfair methods of competition in or affecting commerce, are declared unlawful." 15 U.S.C. § 45(a)(1). Subsection (2) empowers and directs the Federal Trade Commission to

> "prevent persons, partnerships, or corporations, *except* banks, common carriers subject to the Acts to regulate commerce, air carriers and foreign air carriers subject to the Federal Aviation Act of 1958, and persons, partnerships, or corporations insofar as they are subject to the Packers and Stockyards Act . . . from using unfair methods of competition in or affecting commerce and unfair or deceptive acts or practices in or affecting commerce."

*Id.* (emphasis added). Section 7 of the Clayton Act (15 U.S.C. § 18) limits acquisition by one corporation of the stock or assets of another corporation, again with certain explicit exceptions. The Supreme Court has held that the Federal Trade Commission is empowered to enforce Section 7 of the Clayton Act. *See United States v. Philadelphia National Bank,* 374 U.S. 321, 83 S.Ct. 1715, 10 L.Ed.2d 915 (1963).

The FTC's administrative complaint charged Sunkist with violations of the above-cited statutes. The Complaint contained five counts. Count I challenged the exclusive dealing contracts Sunkist allegedly maintains with approximately 51 commercial packinghouses, preventing these packinghouses from packing fruit for non-Sunkist growers and further preventing them from dealing with marketers or processors in competition with Sunkist. Count II challenges a purported agreement between Sunkist and the Western Sales Division of Blue Goose Growers, Inc., pursuant to which Blue Goose agreed to stop marketing fresh grade western citrus fruit. Sunkist then entered into exclusive dealing arrangements with 13 packinghouses owned by or under contract to Blue Goose. Count IV charges that Sunkist, as an instrumentality of its members (who are otherwise in competition with each other), withholds lemon products from the market for the purposes of stabilizing the price of lemon products and deterring entry into the lemon

processing industry. Count V challenges Sunkist's alleged refusal to permit competing processors to buy oranges and lemons from cooperatives under contract to Sunkist, its refusal to permit non-Sunkist growers to have their fruit packed in Sunkist packinghouses, and its refusal to sell processed citrus products to competitors. Counts I, II, IV and V allege violations of Section 5 of the FTC Act. In addition, Count III challenges the August, 1974 acquisition by Sunkist of Growers Citrus Products' assets, a competitor of Sunkist. This is challenged under Section 5 of the FTC Act and under Section 7 of the Clayton Act.

The plaintiff herein asserts that the FTC has no jurisdiction to enforce the above statutes against Capper-Volstead Cooperatives. It asserts, in essence, that Congress created an implied exemption to Section 5 of the FTC Act and Section 7 of the Clayton Act when it enacted the Capper-Volstead Act (7 U.S.C. §§ 191–192) and Section 6 of the Clayton Act (15 U.S.C. § 17). The plaintiff cites, as support for this proposition (*a*) the legislative history of the Capper-Volstead Act, (*b*) the perceived incompatibility of procedures and standards under the Capper-Volstead Act and the antitrust laws, and (*c*) the absence of judicial authority to support the assertion of jurisdiction by the FTC.

▮ As a preliminary matter, resort to the legislative history is unwarranted when the terms of the statute are clear and unambiguous. *National Resources Defense Council, Inc. v. U. S. Environmental Protection Agency,* 507 F.2d 905 (9th Cir. 1974). As the wag once said, "When the legislative history is doubtful, read the statute." It is to these statutes the Court now turns.

Seven U.S.C. § 291 allows "fruit growers . . . [to] act together in associations, corporate or otherwise, . . . in collectively processing, preparing for market, handling, and marketing . . . such products . . . ." Section 292 states that "[i]f the Secretary of Agriculture shall have reason to believe that any such associ-

ation monopolizes or restrains trade in interstate or foreign commerce to such an extent that the price of any agricultural product is unduly enhanced by reason thereof . . ." the Secretary shall file a complaint, hold a hearing on the matter, and take evidence. That section goes on to provide that

> [i]f upon such hearing the Secretary of Agriculture shall be of the opinion that such association monopolizes or restrains trade in . . . commerce to such an extent that the price of any agricultural product is unduly enhanced thereby, he shall issue and cause to be served . . and order . . . directing such association to cease and desist from monopolization or restraint of trade.

Section 6 of the Clayton Act (15 U.S.C. § 17) provides that "[n]othing contained in the antitrust laws shall be construed to forbid the existence or operation of . . agricultural . . . organizations . . . ; nor shall such organizations . . be held or construed to be illegal combinations or conspiracies in restraint of trade, under the antitrust laws." In summary, the Capper-Volstead Act allows fruit growers to collectively act for certain purposes; the Clayton Act provides that the existence of such associations shall not be found to be restraints of trade; and the Capper-Volstead Act requires the Secretary of Agriculture to intervene when the activities of cooperatives cause the price of products to be "unduly enhanced."

■■■ The purpose of the Capper-Volstead Act is to improve the bargaining position of farmers with respect to corporate middlemen in order to increase farm income and to stop the rise of tenancy and the migration of farm families to the cities. *United States v. National Broiler Marketing Ass'n*, 550 F.2d 1380 (5th Cir. 1977). To effectuate these purposes, the Congress authorized farmers to act collectively. Under normal circumstances, the mere *formation* of collective processing and marketing associations would be found to be a violation of the antitrust laws; Capper-Volstead, in conjunction with Section 6 of the Clayton Act, merely removes the formation and ex-

istence of cooperative associations from the sweep of the antitrust laws. *See United Egg Producers v. Bauer Int'l Corp.*, 312 F.Supp. 319 (S.D.N.Y.1970). However, the right under Capper-Volstead to act collectively does not authorize any combination or conspiracy in restraint of trade that agricultural producers may see fit to devise. *Case-Swayne Co. v. Sunkist Growers, Inc.*, 389 U.S. 384, 88 S.Ct. 528, 19 L.Ed.2d 621 (1967); *Pacific Coast Agricultural Export Ass'n v. Sunkist Growers, Inc.*, 526 F.2d 1196 (9th Cir. 1975).

■■■ The Supreme Court has held that although the formation of Capper-Volstead cooperatives is in most cases beyond the reach of the antitrust laws, the *activities* of agricultural cooperatives are not immune from the operation of the Sherman or Clayton Acts. *Maryland & Virginia Milk Producers Ass'n, Inc. v. United States*, 362 U.S. 458, 80 S.Ct. 847, 4 L.Ed.2d 880 (1960); *United States v. Borden Co.*, 308 U.S. 188, 60 S.Ct. 182, 84 L.Ed. 181 (1939). As the Court noted in the *Maryland & Virginia* case, *supra*, "the privilege the Capper-Volstead Act grants producers to conduct their affairs collectively does not include a privilege to combine with competitors so as to use a monopoly position as a lever further to suppress competition by and among independent producers and processors." *Id.* 362 U.S. at 472, 80 S.Ct. at 856. Further, the Supreme Court considered—and rejected— the proposition that the Secretary of Agriculture's power to investigate and issue cease-and-desist orders in certain limited circumstances was sufficient to make the operation of the antitrust laws and the Capper-Volstead Act fundamentally inconsistent:

> That this provision of the Capper-Volstead Act does not cover the entire field of the Sherman Act is sufficiently clear. * * * The Sherman Act hits at attempts to monopolize as well as to actual monopolization. And Section two of the Capper-Volstead Act contains no provision giving immunity from the Sherman Act in the absence of a proceeding by the

Secretary. We think that the procedure under Section two of the Capper-Volstead Act is auxiliary and was intended merely as a qualification of the authorization given to cooperative agricultural producers by [7 U.S.C. § 291] . . . . [T]he . . . procedure . . . which Section two provides is not to be deemed to be designed to take the place of, or to postpone or prevent, prosecution under Section one of the Sherman Act for the purpose of punishing such conspiracies.

*United States v. Borden Co., supra*, 308 U.S. at 206, 60 S.Ct. at 191. Thus, if the Complaint alleged violations of the Sherman Act, the case law is clear and compelling that neither Capper-Volstead nor 15 U.S.C. § 17 would bar suit.

The plaintiff, however, alleges that whatever the impact of the above-cited cases, they do not mention the Federal Trade Commission Act. And the plaintiff notes the extensive legislative history showing that the Congress considered—and rejected—allowing the FTC to enforce the provisions of 7 U.S.C. § 292. As will be demonstrated *infra*, however, plaintiff's arguments are unpersuasive.

Although the case law arising under the Sherman and Clayton Acts is not binding authority, it should be noted that the Federal Trade Commission Act "was intended as a *supplement* rather than as an *amendment* to the existing [antitrust] legislation." 6 von Kalinowski *Antitrust Laws & Trade Regulation* § 38.04[1]. Furthermore,

"[a]ny violation of either the Sherman Act or the Clayton Act is also a violation of Section 5 of the Federal Trade Commission Act. Even activities that are not violative of the Sherman or Clayton Acts due solely to jurisdictional deficiencies in those acts, may be prohibited as unfair acts or practices under section 5 of the Act. Further, activities which threaten to develop into antitrust act violations, or which are otherwise contrary to the policy of those acts, may be held to violate Section 5.

*Id.* at § 41.01 (citations omitted). Congress' attack on nascent violations and unfair practices—beyond the literal scope of the Sherman or Clayton Acts but which nonetheless comprise conduct in contravention of the policy underlying the antitrust laws—indicates that cases construing the Capper-Volstead Act and 15 U.S.C. § 17 vis-a-vis those laws are of more than passing interest in construing the FTC Act.

Second, it is hornbook law that implied exemptions or repeals are disfavored. *See, e. g., United States v. United Continental Tuna Corp.*, 425 U.S. 164, 96 S.Ct. 1319, 47 L.Ed.2d 653 (1976); *SDC Development Corp. v. Mathews*, 542 F.2d 1116 (9th Cir. 1976). In the absence of an affirmative showing of an intention to repeal, the only permissible justification for implicit repeal of a statute by the enactment of another statute is irreconcilability. *Morton v. Mancari*, 417 U.S. 535, 94 S.Ct. 2474, 41 L.Ed.2d 290 (1974); *International Tel. & Tel. Corp. v. General Tel. & Elec. Corp.*, 518 F.2d 913 (9th Cir. 1975). The legislative history of the Capper-Volstead Act, cited extensively by the plaintiff, shows no such affirmative intention. Rather, the Congress merely entrusted the determination of whether prices were "unduly enhanced" to the Secretary of Agriculture on the theory that his expertise and familiarity with agricultural matters would better enable him to determine undue enhancement. In the absence of this affirmative intention, the plaintiff can prevail only if the operation of the Capper-Volstead Act is irreconcilable with the operation of the FTC Act.

As indicated by the *Borden* opinion, *supra*, the operation of the antitrust laws and Capper-Volstead are not irreconcilable. The plaintiff, however, maintains that procedural differences between the two statutes "sets forth an incompatible standard of lawful behavior under the antitrust laws." Plaintiff argues that under the FTC Act findings of fact are, in most cases, conclusive upon courts of appeals, whereas under Section 2 of the Capper-Volstead Act, the Secretary's findings are but *prima facie* evidence, and each party may introduce new evidence in the district court. The argument is disingenious, because the plaintiff ignores the fact that the Secretary of Agriculture is *limited* in his antitrust powers to

issuing cease-and-desist orders where the formation of agricultural cooperatives' existence unduly enhances the price of products. The Secretary has *no* authority to issue cease-and-desist orders where, for example, the existence of agricultural cooperatives unduly restricts entry into the fruit processing business without necessarily creating *undue* increases in the price of products. Yet, that is precisely what the FTC has alleged in the instant action (*see* Count IV of FTC Complaint, *supra*).

Finally, in examining the FTC Act itself, it is quite apparent that Congress knew how to create exemptions when it so desired. 15 U.S.C. § 45(a)(2) contains no less than four specific exemptions to its operation. It seems unlikely, in light of the expressed purpose of the FTC Act, that Congress would subject agricultural cooperatives to Sherman and Clayton Act enforcement, yet deny to the FTC the power to curb nascent violations of those same laws. The Capper-Volstead Act and 15 U.S.C. § 17 do not create an implied immunity for agricultural cooperatives from prosecution under 15 U.S.C. § 45. This is true at least where the conduct alleged does not relate to the *existence* or *formation* of these cooperatives, but rather, focuses on the anticompetitive conduct of these cooperatives beyond the scope of the Secretary of Agriculture's cease-and-desist authority.

## C. *PRIMARY JURISDICTION*

Finally, the plaintiffs claim that even if the Court does not find that the Capper-Volstead Act completely displaces the operation of the unfair competition statutes, the doctrine of primary jurisdiction compels the FTC to defer to the Secretary of Agriculture. Of course, the doctrine of primary jurisdiction regulates the relationship between courts and administrative agencies:

> The doctrine of primary jurisdiction will be invoked, and the antitrust proceedings stayed pending agency review, when the court finds that it has jurisdiction but that agency review of the challenged conduct would be of material aid to the court in disposing of the antitrust issues.

7 von Kalinowski, *Antitrust Laws and Trade Regulation* § 44A.01[2][b]. It has no direct application to the relationship between two federal agencies, and conflicts arising over the propriety of their respective exercises of jurisdiction. The problem here is whether the FTC should stay its hand pending review by the Secretary of Agriculture, not whether this Court should stay its exercise of jurisdiction pending the Secretary's decision. Restated, plaintiff's claim is whether the FTC abused its discretion or was otherwise in error in failing to abstain pending investigation by the Secretary of Agriculture. To make this determination, the Court will borrow the logic of the primary jurisdiction cases.

The plaintiff makes much of the fact that the FTC's Director of the Bureau of Competition "has in fact conceded that the Capper-Volstead Act gives the Secretary, 'primary, as opposed to exclusive, jurisdiction over cases of undue price enhancement by farmer cooperatives . . . .'" However, as indicated above, the gravamen of the FTC's Complaint herein is *not* undue enhancement of pricing. Rather, the FTC challenges the monopolistic practices of Sunkist because they deter entry and reduce the number of competitors in the industry. Furthermore, to the extent the FTC challenges the conduct of the plaintiff with respect to pricing, its allegations do not focus on the undue *enhancement* of prices emerging from the *existence* of these cooperatives; rather, the FTC is concerned that the cooperatives are attempting to *stabilize* the price to deter entry, and further that the cooperatives attempt to *control* these prices at a level which will continue to deter entry. As demonstrated above, the prices set are not necessarily *undue*—they may just be above competitive levels, and the Secretary is powerless. Primary jurisdiction is thus inapposite in light of the allegations made here by the FTC.

> The doctrine of primary jurisdiction will not be invoked if it is clear that the agency's decision will have no bearing on the antitrust issues. Even when the defendant alleges that it is acting under an agreement approved of by the agency, the doctrine of primary jurisdiction will not be invoked if the court finds that the defendant's action could not possibly be

found by the agency to be within the scope of the agreement.

7 von Kalinowski, *supra* at § 44A.01[2][b].

The plaintiff further alleges that "the FTC's direct focus on price conflicts squarely with the Secretary's administration of marketing orders for fresh lemons and oranges." Because domestic sales of fresh lemons and oranges are controlled by the Secretary of Agriculture pursuant to marketing orders, Sunkist feels that any allegation of anticompetitive conduct must necessarily stem from the Secretary's control of the quantity of goods being shipped to market. A review of the FTC Complaint reveals that this is not the case. The Secretary has no authority over the acquisition by one cooperative of the assets or stock of another competitor. The Secretary has no control over the contracts entered into between one cooperative and another dealing with purchase of available supplies or processing. Rather, a fair reading of Capper-Volstead reveals that reference to the Secretary of Agriculture would be a meaningless gesture, as the legislation gives the Secretary no power over conduct unrelated to the pricing and quantity of goods shipped to market. The FTC properly asserted jurisdiction over Sunkist.