E. I. DuPONT de NEMOURS AND COMPANY, Plaintiff,

v.

FEDERAL TRADE COMMISSION, and its Commissioners, Michael Pertschuk, Paul Rand Dixon, David A. Clanton and Robert Pitofsky, Defendants.

Civ. A. No. 79–471.

United States District Court, D. Delaware.

April 9, 1980.

Lawton A. Burrows of E. I. DuPont de Nemours and Co., Wilmington, Del., for plaintiff; Daniel M. Gribbon and Terry Coleman of Covington & Burling, Washington, D. C., and Gerald E. Kandler and William E. Macintyre, of E. I. DuPont de Nemours and Co., Wilmington, Del., of counsel.

James W. Garvin, Jr., U. S. Atty., John X. Denney, Jr., Asst. U. S. Atty., Wilmington, Del., Alice Daniel, Asst. Atty. Gen., Civ. Div., and R. John Seibert and Nancy M. Floreen, Attys., Dept. of Justice, Washington, D. C., for defendants; Michael N. Sohn, Gen. Counsel, Howard E. Shapiro, Deputy Gen. Counsel, W. Dennis Cross, Asst. Gen. Counsel, and Edward F. Glynn, Jr., Atty., F. T. C., Washington, D. C., of counsel.

## OPINION

LATCHUM, Chief Judge.

E. I. DuPont de Nemours and Company ("DuPont") filed this action against the Federal Trade Commission ("FTC") and its individual Commissioners, on October 1, 1979, in an effort to obtain a declaratory judgment that a pending FTC administrative complaint does not allege a violation of the Federal Trade Commission Act[1] ("Act"); and that the FTC violated DuPont's First Amendment right of free speech by filing the administrative complaint. Predictably, the FTC has moved to dismiss the present action. Although the Court is sympathetic to DuPont's position, it has concluded that the FTC's motion to dismiss must be granted.

## I. BACKGROUND

There are only four companies in the United States that manufacture and sell leadbased antiknock compounds[2] as gasoline additives. Those companies are: Du-

---

1. 15 U.S.C. §§ 41 -58 (1976).

2. Leadbased antiknock compounds are compounds containing tetraethyl or tetramethyl

Pont, Ethyl Corporation ("Ethyl"), PPG Industries, Inc., and Nalco Chemical Company ("Nalco"). All four companies were named as defendants in an administrative complaint filed by the FTC on May 30, 1979.

The FTC complaint charges that each of the companies has engaged in acts or practices that are "unfair" within the meaning of Section 5 of the Act. *See*, 15 U.S.C. § 45. Specifically, the complaint charges that the companies: (a) quote and sell their compounds only on the basis of a delivered price[3]; (b) agree in their sales contracts to give their customers 30 days advance notice of proposed price changes; and (c) frequently give more than thirty days' advance notice of price changes to the press, directly or indirectly to each other, and to existing or potential customers. The FTC complaint finally charges that DuPont and Ethyl utilize a "most favored nation" clause[4] in their standard form sales contracts and that Nalco has used such a clause in a substantial number of its contracts.

The administrative complaint does not allege that any of the defendants engaged in such acts or practices as the result of any agreement or collusion among themselves or with others. Neither does the FTC complaint allege that the acts or practices are artificial, without legitimate business purposes, or that they were adopted in order to keep their competitors informed of their prices. Instead, the FTC complaint alleges that those acts and practices are "unfair" simply because they help to reduce the defendants' uncertainty about their competitor's prices thereby facilitating the maintenance of substantially uniform prices and reducing or eliminating price competition in the leadbased antiknock compound market.

The FTC complaint is based on the admittedly novel theory that the FTC is authorized to increase uncertainty about product prices in a concentrated industry by declaring otherwise legitimate practices to be "unfair" and hence unlawful under Section 5 of the FTC Act. In order to promote uncertainty, delivered price and most favored nation clauses would be banned from sales contracts for antiknock compounds and the companies would be forbidden in the future from announcing or even discussing its prices outside their corporate structures except that customers could be informed of current prices. In addition, DuPont and the other companies would be prohibited from advertising their prices, or from responding to press inquiries, and from informing customers of future prices. Despite the novelty and far-reaching aspects of the FTC complaint, neither DuPont nor the other companies moved to dismiss that complaint before the administrative law judge. Instead, each answered the complaint, initiated discovery, and participated in at least one pre-trial conference.

DuPont also took two additional steps. At some point after the FTC complaint was filed, it adopted a new policy of no longer informing the press of the amount of any planned price changes. Following that change in policy, DuPont filed the present action. DuPont contends here that the FTC has exceeded its authority, and that its administrative complaint is void as a matter of law because the four practices under challenge are not unfair or unlawful under the Act. DuPont further contends that the FTC complaint itself infringes DuPont's First Amendment right of free speech by declaring unlawful and proposing to prohibit the advertisement or other press announcements of its antiknock compound prices. The FTC, without filing an answer to these claims, has moved to dismiss DuPont's complaint for lack of jurisdiction and

lead which are added to gasoline to increase its octane rating.

3. Delivered price means that the price to the customer includes transportation costs, that is, the same delivered price is offered to each customer regardless of the actual freight expense which might be incurred for the particular customer involved.

4. A "most favored nation" clause is an important clause for a buyer under a long-term contract. Under such a clause the vendor promises that, if it sells its product to a third person under more favorable terms than those agreed upon in the contract, the vendor will offer the same terms to the buyer.

for failure to state a claim upon which relief can be granted.

## II. *DISCUSSION*

The FTC's motion to dismiss focuses primarily on DuPont's failure to exhaust its administrative remedies. In addition, the FTC also appears to argue that certain provisions of the Act deprive this Court of jurisdiction over DuPont's complaint.[5] The latter argument, which questions the very power of the Court to hear this case, will be considered first.

### A. *Jurisdiction*

Section 45(a)(1) of the Act provides that: [u]nfair methods of competition in or affecting commerce, and unfair or deceptive acts or practices in or affecting commerce, are . . . unlawful.

15 U.S.C. § 45(a)(1). Subsection (b) of the same section provides that the FTC shall issue a complaint and hold a hearing whenever it has reason to believe that someone is violating the Act and it believes that such a hearing would be in the interest of the public. 15 U.S.C. § 45(b). Subsection (b) further provides that the party who is named in the complaint shall have the right to appear at the hearing and show cause why a cease and desist order should not issue. If a cease and desist order thereafter issues, the party subject thereto may obtain judicial review in the appropriate court of appeals by filing a petition in the court of appeals within 60 days of the date of the order. 15 U.S.C. § 45(c). Once a petition for review has been filed and the record of the proceedings before the FTC has been transmitted to the court of appeals that court's jurisdiction to "affirm, enforce, modify, or set aside orders of the [FTC is] exclusive." 15 U.S.C. § 45(d).

The FTC appears to argue that this statutory framework operates to deprive this Court of jurisdiction of DuPont's complaint.[6] The Court is unable to agree.

■ Section 45(d) of the Act clearly grants to the appropriate court of appeals exclusive jurisdiction to review any cease and desist order issued by the FTC. And once a cease and desist order has issued, it would appear that this section would also confer exclusive jurisdiction on the court of appeals to consider the validity of any other orders issued or actions taken during the FTC administrative proceedings. Thus by negative implication, once a cease and desist order has issued, this Court would be deprived of any jurisdiction which it might otherwise have to review cease and desist orders or other orders issued or actions taken during the course of an FTC administrative proceeding.

On the other hand, Section 45(d) does not grant to courts of appeals any jurisdiction—exclusive or otherwise—to review orders issued during the course of an FTC administrative proceeding until a cease and desist order has issued. Consequently, that section cannot be interpreted to deprive this Court of jurisdiction to review any orders issued or actions taken by the FTC when a cease and desist order has not yet been issued. *See, Pepsico, Inc. v. FTC*, 472 F.2d 179, 185 (C.A.2, 1972).

Furthermore, the remaining sections of the Act fail to provide any better support for the FTC's jurisdictional argument. Those sections neither expressly confer exclusive jurisdiction over any type of claim upon the courts of appeal or the FTC, *cf. Myers v. Bethlehem Corp.*, 303 U.S. 41, 48, 58 S.Ct. 459, 462, 82 L.Ed. 638 (1938), nor do they expressly deprive district courts of jurisdiction over any type of claim. *Cf. Weinberger v. Salfi*, 422 U.S. 749, 756–57, 95

---

**5.** The FTC apparently agrees that the Court would otherwise have jurisdiction of this action by virtue of 28 U.S.C. §§ 1331(a) & 1337.

**6.** The FTC relies on *City of Tacoma v. Taxpayers of Tacoma*, 357 U.S. 320, 78 S.Ct. 1209, 2 L.Ed.2d 1345 (1958) to support its argument. That reliance is clearly misplaced. In *City of Tacoma* the Court held only that a party to an

administrative proceeding may not collaterally attack a final agency decision in a separate court action after the agency decision has been reviewed and affirmed by the court of appeals. *Id.* at 336–37, 78 S.Ct. at 1219. That holding does not support the FTC's position in this case.

S.Ct. 2457, 2462, 45 L.Ed.2d 522 (1975). Thus, the Court concludes that the Act does not deprive it of jurisdiction to review orders issued or actions taken during the course of an FTC administrative proceeding when a cease and desist order has not yet issued.[7] See, *Susquehanna Valley Alliance v. Three Mile Island Nuclear Reactor*, 619 F.2d 231 at 237 (C.A.3, 1980) (No. 79–2446, slip op. at 10 (C.A.3, March 17, 1980)); *Sunkist Growers, Inc. v. FTC*, 464 F.Supp. 302, 305 (C.D.Cal.1979).

■ In this case the FTC administrative proceedings are in the initial stages and a cease and desist order has not been issued. Indeed the only action which DuPont challenges here is the filing of the FTC complaint. Therefore, the Court concludes that the Act does not deprive it of jurisdiction over DuPont's complaint as the FTC contends.

### B. *Exhaustion*

The FTC's primary contention is that Du-Pont's complaint should be dismissed because DuPont has failed to exhaust its administrative remedies. This contention forces the Court to consider an area of administrative law which is not always clearly understood by litigants or the courts.

■ The so-called doctrine of exhaustion actually embraces a number of related principles which are applied by the courts to various situations and like most judicially created doctrines are subject to numerous exceptions. See, *McKart v. United States*, 395 U.S. 185, 193, 89 S.Ct. 1657, 1662, 23 L.Ed.2d 194 (1969). One of the most basic precepts of the doctrine is the principle that a defendant in an administrative proceeding should normally give the agency an opportunity to rule on a claimed legal defense to the proceeding before raising that defense in a separate court action.[8] *Jewel Companies, Inc. v. F. T. C.*, 432 F.2d 1155 (C.A.7, 1970); *California ex rel. Christensen v. F. T. C.*, 549 F.2d 1321, 1324 (C.A.9), cert. denied 434 U.S. 876, 98 S.Ct. 227, 54 L.Ed.2d 156 (1977); *Sunkist Growers, supra*, at 305–306; see also, *FPC v. Louisiana Power & Light Co.*, 406 U.S. 621, 647, 92 S.Ct. 1827, 1842, 32 L.Ed.2d 369 (1972); *Casey v. FTC*, 578 F.2d 793, 798 (C.A.9, 1978). DuPont clearly has not complied with this principle.

The FTC administrative complaint was filed against DuPont on May 30, 1979. Du-Pont filed an answer to that complaint, engaged in discovery, and participated in at least one pre-hearing conference in connection with that planned administrative proceeding. It did not, however, choose to present a motion to the administrative law judge to dismiss the proceedings.[9] Instead, it has come to this Court seeking a declaratory judgment that the FTC complaint fails to allege facts that establish a violation of the Act and exceeds the FTC's authority and also infringes upon DuPont's First Amendment rights of free speech.

---

7. Some courts have held that district courts do not have jurisdiction to review "interlocutory" orders or actions which are issued or taken in FTC administrative proceedings. See, e. g., *Seven-Up Company v. FTC*, 478 F.2d 755 (C.A.8), cert. denied 414 U.S. 1013, 94 S.Ct. 379, 38 L.Ed.2d 251 (1973). Those holdings, however, appear to be based on the doctrine of exhaustion—a court made principle—which does not affect the jurisdiction of courts. See, *Susquehanna Valley Alliance, supra*, at ——.

8. There are several important policy reasons underlining this principle, including a notion of administrative autonomy and a concern for the effectiveness of agency proceedings. See, *McKart, supra*, 395 U.S. at 195, 89 S.Ct. at 1663. The most important reason for applying the principle in this case, however, is the fact that the Administrative Law Judge, and upon

appeal the Commission, may agree with Du-Pont's statutory argument. Should this occur, this Court will not have to consider the question of whether the FTC has exceeded its authority or the constitutional issue that has been raised by DuPont.

9. Under the FTC's regulations a defendant in an administrative proceeding may raise a legal defense by means of a motion to dismiss or a motion for a summary decision. See, 16 C.F.R. §§ 3.22 & 3.24 (1980). It appears to the Court that DuPont may still be able to present its alleged statutory defense to the ALJ by means of one or both of these summary procedure mechanisms. The unavailability of those summary procedures at this stage of the proceedings would not, however, necessarily affect the Court's decision. See, footnote 10 *infra*.

■ Therefore, it appears that the DuPont complaint should be dismissed for failure to exhaust administrative remedies,[10] unless, as DuPont contends, this case falls within one of the exceptions to the exhaustion doctrine. .

Turning now to DuPont's arguments that this case is within one of the exceptions of the exhaustion doctrine, the Court finds that DuPont relies initially upon *Leedom v. Kyne*, 358 U.S. 184, 79 S.Ct. 180, 3 L.Ed.2d 210 (1958). In *Leedom*, the National Labor Relations Board ("Board") had clearly violated an express provision of the National Labor Relations Act ("NLRA") by including both professional and non-professional employees in a bargaining unit without allowing the professional employees to decide whether they wanted to be included in such a mixed unit. Following that action a union which desired to represent the professional employees brought an action in a district court and obtained a judgment overturning the Board's decision. On appeal to the Supreme Court the Board argued that the district court should have dismissed the action. In support of its argument the Board relied on a decision by the Supreme Court which held that unit determination orders are not reviewable in court except in connection with a review of a related unfair labor practice proceeding. *See, American Federation of Labor v. Labor Board*, 308 U.S. 401, 60 S.Ct. 300, 84 L.Ed. 347 (1940). The Supreme Court rejected the Board's argument and held that the district court had acted properly in exercising its jurisdiction and overturning the Board's decision. The *Leedom* Court distinguished its earlier decision by emphasizing the fact that in *Leedom* the Board had clearly acted in a manner that was specifically prohibited by the NLRA and had thereby deprived the professional employees of a clear statutory right.

■ The *Leedom* Court's decision does not provide support for DuPont in this case. The plaintiff in *Leedom* had already presented its legal argument to the Board and the Board had rejected it. Thus the plaintiff in *Leedom* had already satisfied the exhaustion requirement that we are primarily concerned with in this case. Moreover, a refusal to have considered the merits in *Leedom* could have effectively insulated the Board's decision from further consideration or review since there were no . further administrative proceedings pending and the union could not force a court review of the proceedings by refusing to bargain with the company.[11] Obviously this latter concern is not present in this case since the administrative proceedings are still pending and DuPont can obtain court review of any adverse decision that may be made at the conclusion of the administrative proceedings. Therefore, the Court concludes that DuPont's failure to exhaust cannot be excused under the authority of the *Leedom* decision.

DuPont also argues, however, that the lower courts have extended the *Leedom* decision to create a general exception to the

10. The Court should not be understood to be suggesting that DuPont's duty to exhaust would necessarily be satisfied if it did present its statutory defense to the FTC at this point and the FTC rejected it. Another exhaustion principle might be applicable in that situation. That principle is that a defendant in an administrative proceeding must normally wait until the agency proceeding is complete before presenting its claims to a court. *Compare Seven-Up Company, supra, with, Sunkist Growers, Inc., supra.*

11. When an employer is aggrieved by some Board action during the course of an election proceeding it can usually obtain a court review of that action by simply refusing to bargain with the union. Since the union will want to bargain, it will almost certainly file an unfair labor practice charge for the company's refusal to bargain and the employer can then obtain a court review of the election proceedings when it appeals from the final order that is issued at the conclusion of the unfair labor practice hearing. *See, Boire v. Greyhound Corp.*, 376 U.S. 473, 477, 84 S.Ct. 894, 896, 11 L.Ed.2d 849 (1964). On the other hand, a union cannot necessarily obtain court review of the Board's actions in the same manner. The company that is involved may have no desire to file an unfair labor practice charge when the union refuses to bargain. Thus, the union will find it much more difficult to obtain court review of an unfavorable Board decision regarding an election.

exhaustion requirement whenever a plaintiff can make a substantial showing that the agency has acted outside of its statutory mandate. Such an exception has been recognized in the past by this Court. *Exxon Corp. v. F.T.C.*, 411 F.Supp. 1362, 1370 (D.Del.1976). That exception is not, however, as broad as it would seem at first glance. As Judge Wright noted in the *Exxon* case, a plaintiff normally cannot qualify for this exception unless he can show that the agency has acted in "blatant disregard of express statutory provisions to the contrary."[12] *Exxon, supra*, at 1372. DuPont clearly cannot make such a showing in this case since it is undisputed that there are no statutory provisions which expressly prohibit the FTC from challenging the business practices which are the basis of its administrative complaint. DuPont, therefore, cannot rely on this exception to excuse its failure to exhaust.

DuPont's final exhaustion argument is based on its allegation that its constitutional rights are being infringed. DuPont contends that it should not be required to exhaust because it has raised a non-frivolous constitutional claim. The Court does not agree.

Over thirty years ago the Second Circuit Court of Appeals held that a union could obtain an immediate review of a Board election order in a district court when the union made a non-frivolous allegation that its constitutional rights had been infringed by the Board's order. *Fay v. Dowds*, 172 F.2d 720 (C.A.2, 1949). That decision, however, does not provide persuasive authority for DuPont's position here.

In the first place the *Fay* decision is inapplicable for the same two reasons that the *Leedom* decision was inapplicable. That is, the plaintiff union in *Fay* had already presented its argument to the Board and lost, and the possibility that there would be no further review of that determination weighed heavily in favor of an immediate judicial determination of the union's claims.

 Moreover, even if the *Fay* decision was not distinguishable on those grounds the Court would still be disinclined to follow it. The Second Circuit itself has questioned its continued validity, and every other Court of Appeals that has directly considered it has either rejected it entirely or limited its application. *See, Utica Mutual Insurance Co. v. Vincent*, 375 F.2d 129, 134 (C.A.2), *cert. denied* 389 U.S. 839, 88 S.Ct. 63, 19 L.Ed.2d 102 (1967); *Grutka v. Barbour*, 549 F.2d 5, 9, n. 7 (C.A.7), *cert. denied* 431 U.S. 908, 97 S.Ct. 1706, 52 L.Ed.2d 394 (1977); *Amalgamated Meat Cutters v. Allen*, 423 F.2d 267, 269 (C.A.8, 1970); *Greensboro Hosiery Mills, Inc. v. Johnston*, 377 F.2d 28, 32 (C.A.4, 1967); *Boire v. Miami Herald Publishing Co.*, 343 F.2d 17, 21, n. 7 (C.A.5), *cert. denied* 382 U.S. 824, 86 S.Ct. 56, 15 L.Ed.2d 70 (1965). Accordingly, the Court concludes that DuPont's failure to exhaust cannot be excused simply because it has raised a non-frivolous constitutional claim in its complaint. *See, First Jersey Securities, Inc. v. Bergen*, 605 F.2d 690, 697 (C.A.3, 1979).

 The Court is not suggesting, however, that a party must always exhaust its administrative remedies before it will be allowed to present a constitutional claim to the courts. The rule in this Circuit is that a failure to exhaust may be excused when the complaining party can show that an administrative agency has taken some action which clearly and unambiguously violates the complaining party's constitutional rights. *Susquehanna Valley Alliance v. Three Mile Island Nuclear Reactor*, 619 F.2d 231, 244, No. 79–2446, slip opinion at 25 (C.A.3, March 17, 1980); *First Jersey Securities, supra*, at 696; *Barnes v. Chatterton*, 515 F.2d 916, 920 (C.A.3, 1975). Du-

---

12. Judge Wright also held in *Exxon* that immediate review could be obtained in cases where it was not blatantly clear that the agency had exceeded its jurisdiction, when the action appealed from was sufficiently final, and when an adequate review of the action would be una-

vailable at the conclusion of the proceedings. *Exxon, supra*, at 1372. DuPont obviously cannot qualify under this exception either since the action it complains of—the issuance of the complaint—is clearly not final agency action.

Pont's failure to exhaust, therefore, might be excused provided it established that the FTC had taken some action which clearly and unambiguously violates its constitutional rights.

In this regard, DuPont contends that it has met that standard. This contention is based on two propositions. The first is that DuPont has a constitutional right to make truthful statements to the press and the public concerning planned price changes even if those statements facilitate the maintenance of substantially uniform price levels in the leadbased antiknock compound market. The second is that the FTC has impermissibly infringed on its First Amendment right to make such statements by filing the challenged administrative complaint. For present purposes the Court is willing to assume that DuPont's first proposition is valid. The Court is unable to agree, however, with DuPont's second proposition.

■ An administrative body would obviously violate the First Amendment if it directly ordered a person to stop engaging in speech which was protected by the First Amendment. It would also violate the First Amendment if it imposed or threatened to impose significant costs or sanctions on the use of protected speech and thereby caused reasonable persons to stop engaging in the protected speech in order to avoid the risk of incurring the costs or sanctions. But the FTC has done neither of those things in this case so far.

The FTC has not ordered or even attempted to order DuPont to cease and desist from making truthful statements about future prices to the press or the public.[13] Nor has it imposed or threatened to impose on DuPont the type of costs or sanctions that would cause a reasonable person to stop making such statements.[14] The FTC has done nothing more than file an administrative complaint that alleges that price announcements and statements by DuPont violate the Act.

The Court recognizes that, after the FTC complaint was filed, DuPont adopted a restrictive policy regarding the information that it would release to the press. DuPont does not claim, however, that it adopted this policy in response to an order from the FTC. Nor does it claim that its new policy was adopted in order to avoid having costs or sanctions imposed upon it by the FTC. Thus, the Court concludes that any "chill" that DuPont has experienced since the FTC complaint was filed is not directly traceable to the filing of that complaint. Consequently, the FTC cannot be held to have violated DuPont's First Amendment rights by simply filing that complaint.[15]

In conclusion, the Court holds that DuPont has failed to exhaust its administrative remedies and that its failure cannot be excused under any exception to the exhaustion requirement which is recognized in this Circuit.

13. The mere possibility that such an order will be entered in the future does not excuse a failure to exhaust. See, *First Jersey Securities, supra,* at 700.

14. The only "threat" that is involved in the administrative proceedings is the threat that a cease and desist order will be issued at the conclusion of the proceedings. No other sanctions or penalties can be imposed on DuPont as the result of those proceedings. Furthermore, if a cease and desist order is issued at the conclusion of the proceedings that order can be stayed automatically by the filing of an appeal. See, 15 U.S.C. § 45(g).

15. Judge Herman's decision in *McCormick v. Hirsch,* 460 F.Supp. 1337 (M.D.Pa.1978) is thus distinguishable because in that case the Board's very attempt to exercise jurisdiction over lay teachers in the Catholic School system was viewed as a violation of the School's First Amendment right to the free exercise of religious beliefs. *Id.* at 1346, 1350–51. The *McCormick* decision is also distinguishable on a number of other grounds. The most obvious distinguishing feature is the fact that the Board had summarily rejected arguments that were identical to those raised by the *McCormick* plaintiffs in seven prior cases. It would thus have been futile to require the plaintiffs in that case to present those arguments to the Board again. On the other hand, in the present case the FTC has never ruled on the legal defense that is asserted by DuPont. A futility argument, therefore, cannot realistically be made here.